VONAULT, Respondent, v. O'ROURKE, Appellant.

(No. 7,244.)

(Submitted April 30, 1934. Decided May 23, 1934.)

[33 Pac. (2d) 535.]

Mr. *J. B. C. Knight* and Mr. *Earle N. Genzberger,* for Appellant, submitted a brief; Mr. *Genzberger* argued the cause orally.

*Mr. T. P. Stewart* and *Mr. Sid G. Stewart,* for Respondent, submitted a brief, the former arguing the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Deer Lodge county in a malpractice action prosecuted by Alice Vonault against Dr. J. L. O'Rourke. Judgment for $2,200 was entered after verdict of the jury. New trial was denied and appeal taken to this court.

About the 1st of June, 1931, plaintiff consulted defendant as to her physical condition and was by him advised that she was afflicted with fibroid tumor and diseased appendix. Defendant recommended an operation for her relief. On June 4 it was agreed that the operation should be performed the next morning. The defendant told plaintiff to arrange for a room at St. Ann's Hospital, and that he would arrange for an operating room. The suggested arrangements were carried into effect and plaintiff entered the hospital that evening. The operation occurred between the hours of 8 o'clock and 10:50 on the morning of June 5. Those present at the operation were the defendant Dr. O'Rourke, who performed the operation, Dr. John H. Noonan, who assisted, Dr. T. J. Kargican, who administered the anesthetic, Margaret Casy, then a student nurse, who acted as "sponge nurse," two other nurses, one of whom acted as instrument nurse, and the other who assisted in various ways, and a "sister" who had some official position with the hospital. Lizzie Reviere, a sister of plaintiff, went to the operating room with her and remained near the doorway during the operation; she saw a part of the operation but was not near enough to observe it all.

Plaintiff was prepared and dressed for the operation by a hospital nurse and the doctors. The operative field was cleansed and sterilized, and the patient was dressed in a "surgical gown" such as is ordinarily used in the circumstances. The gown opened at the back and came up to about the region of the collar-bone. Over the gown a sheet was draped from the neck down; a towel folded in three folds was placed over the patient's chest. An ether mask was placed above the face. When the patient was first placed on the operating table there was a pillow under her head; this was later removed and her head allowed to rest on the table on a plane with the shoulders. After she had been "surgically anesthetized" by the use of ether her hands were brought up from her sides and folded upon her chest. The surgical gown was brought up and folded over the arms and a drop sheet left on top. At about this stage of the proceedings the head

of the operating table was lowered so that the patient was left in what was termed a "Trendelenburg position" (that is, a position in which the body from the waist up was lower than the other part of the body). The ether was dropped on the mask at a rate not faster than it evaporated. Dr. Kargican devoted his entire attention to the administration of the anesthetic and had nothing to do with the operation proper.

The operation was successful and the patient obtained the desired relief. All agree as to the accuracy of the diagnosis and the beneficial result accomplished. At the conclusion of the operation plaintiff was returned to the hospital room and there delivered into the charge of Miss Johannah Driscoll, a graduate registered nurse. The nurse kept what is known as a chart or nurse's record. This record was in evidence and disclosed that plaintiff was returned to her room from the operating table at 10:50 o'clock A. M. The nurse testified that she immediately began to minister to the needs of her patient, and at 11 o'clock administered a salt solution. This solution was injected into the axillae just under the arms. The skin was perforated by two needles, each on an extension of a forked tube running from the receptacle in which the solution was contained. The chart denominates this a normal salt solution and designates the quantity as a "thousand cc," that is, about a quart. The solution was fed into the system slowly through the needles, and the operation consumed some time. At 11:15 Dr. O'Rourke visited the room and observed the patient. At that time plaintiff had not regained consciousness and probably did not do so until after the injection had been completed; at least the patient had no knowledge or recollection of such an injection, and in her testimony said: "I never had any injection of salt solution into my breast." This statement is not surprising in view of the fact that she also testified: "I awakened from the anesthetic some time late in the afternoon." At some time subsequent to the recovery of consciousness plaintiff felt a burning sensation on her chest, and upon examination it was found that she had a large blister which she described as about an inch thick and two inches

long and an inch wide; the time of the discovery of this blister is in controversy. Plaintiff testified that while Dr. Kargican was administering the anesthetic she felt something drop on her chest as she was passing out, and that she felt the pain in her chest when she first came out of the ether, and that she called the attention of the nurse to the blister some time in the afternoon or evening of the day of the operation.

Mrs. Riviere, sister of plaintiff, and Miss Mary Sheehan, a friend, testified that during the afternoon or evening of the 5th they visited plaintiff in her room at the hospital and that at that time she mentioned this blister and said, "Look what they did to me." Plaintiff and her witnesses testified that there was no blister or blemish of any kind on her breast prior to her entering the operating room. This is substantiated by the defendant and by all who observed plaintiff prior to the operation. The nurse, Miss Driscoll, testified positively that the blister was not evident on the patient's chest when she returned to her room and when she administered the salt solution. She testified that there was no evidence of the blister and no complaint about it, and that it was not observed until the morning after the operation, June 6. The notation on the chart as of 7 A. M. on June 6 is: "Blister on chest about one inch wide and three inches long. Zinc sterate powder and sterile dressing applied." Plaintiff testified that the blister was not only discovered on the evening of the 5th, but that the nurse opened it at that time and put talcum powder on it. Dr. O'Rourke testified that the blister was never called to his attention until his visit to plaintiff on the morning of the 6th, which the chart shows occurred at 7 o'clock. Plaintiff claims that the doctor did not visit her at all after the operation, on the 6th, although she said, "The chart ought to show when he called." She testified that when the doctor did visit her she remarked, "I have a notion to sue you," to which the doctor responded, "For what?" and that she said, " 'For what you did to my chest' and I showed it to him and he just told the nurse to put a little talcum powder on it and it would be all right. I said: 'You must have burned me with ether

or something. I felt something drop on me.' He said, 'I worked fast and furiously and I may have laid a hot pack on your chest.'" Defendant denied that he ever made the last statement.

Plaintiff testified that the blister or burn caused her great pain; that it filled with pus and gave out a disagreeable odor; that in healing it left a nasty scar which had not disappeared at the time of the trial; and that the injury still burned and annoyed her and dealt her "all kinds of misery," so that she could not sleep; and that it particularly bothered her when she was warm and when the bedclothing and other articles came in contact with it. She testified that defendant ministered to this injury in his office a couple of times; that he removed the scab with a safety razor and that the injury remained open and drained for two or three months; that defendant wanted her to return to the hospital and offered to cut the scar out and sew it across, but she refused to have that done.

The amended complaint alleges that defendant, in the performance of the operation and in the handling, treatment and care of plaintiff during and after the operation, did not use due or proper care or skill in the treatment, in that, between the time of the commencement of the administration of the anesthetic and the time when plaintiff regained consciousness after the operation, defendant carelessly, negligently and unskillfully permitted and caused plaintiff to be severely burned and injured, and that the burn or injury was produced upon plaintiff while she was under the influence of the anesthetic and wholly unconscious and unaware of the burn or injury, until she had been removed from the operating room in the hospital to her private room therein and after she regained consciousness.

Defendant filed a demurrer to the amended complaint. It was overruled and an answer was filed in which the allegations were denied.

In the presentation of the defense, Dr. O'Rourke, Dr. Noonan, Dr. Kargican, and the nurses explained in great de-

tail the manner and incidents of the operation. Dr. Kargican in particular made not only a detailed explanation of the incidents of the operation but brought into the courtroom either the articles used at the time, or others of like kind, and in fact endeavored to re-enact and reproduce the scenes and occurrences of the operation for the benefit of the jury. All the doctors and nurses asserted that the operation was performed without negligence and according to the highest standards of professional skill; that there was no negligence; and that nothing was done in the course of the operation that could possibly have resulted in the infliction of the burn on plaintiff's chest. Miss Driscoll, the nurse, detailed everything that occurred in plaintiff's room in the hospital after she was returned from the operating room, and denied that there was anything done by her or in the course of her treatment of and ministrations to plaintiff that could have inflicted the injury. She testified that hot water bags were used to heat the bed from the time the patient returned from the surgery and for about twenty-four hours after she was operated on; that these hot water bags were changed often enough to keep them hot; that such was the proper treatment and that one was placed at the foot of the bed and another around the hips of the patient; that they were placed on top of the blanket so that they could not come in direct contact with the patient's skin; that the patient rested well during the night and did not complain of any pain; that at 7 o'clock in the morning of the 6th, at about the same time that she discovered the blister on plaintiff's chest, she also discovered that the hot water bottle which had been placed at the hips was on the floor. She also testified that it was the morning of the 6th when plaintiff talked to Dr. O'Rourke about the blister. In this she was corroborated by Dr. O'Rourke.

In addition to the testimony of the witnesses who were present and testified to facts of their own knowledge, defendant produced medical evidence given by Drs. Kistler and Thorkelson, of Butte, and Dr. Long, of Anaconda, all of whom testified that it would have been impossible for plaintiff to suffer the

burn in the course of the operation as the same was outlined and explained to them. All the witnesses asserted that the burn could not have been inflicted by ether or hot packs in the operating room, and no testimony was adduced by plaintiff, either in her case in chief or in rebuttal, to prove that the burn was or could have been so caused. Dr. Thorkelson testified that such blisters may result from many causes, including shingles and other eruptions which are brought about by systemic conditions. There was other medical testimony to that effect. However, defendant in his testimony stated: "I do not think that it was the result of some foreign substance or some infection of the skin. She received this burn while under my care as her physician and surgeon and while she was in the hospital, but whether in the operating room or afterwards I do not know."

The foregoing excerpts from the testimony do not contain all the evidence on the subject, but they are as direct and as enlightening as any of the other statements of witnesses and are typical of the testimony given in the case as a whole. It must be observed that the evidence did establish the fact of the burn but did not establish or explain just how or when it was inflicted.

At the opening of testimony in the case and when plaintiff offered the first witness, defendant objected to the introduction of any testimony on the ground that the complaint did not disclose any act of negligence on the part of the defendant, and that it failed to allege that the defendant did anything which he should not have done in the course of the operation, or failed to do anything he should have done, and that the complaint did not state facts sufficient to constitute a cause of action. This objection was overruled. At the close of plaintiff's testimony a motion for a nonsuit was made by defendant. This motion was based on practically the same grounds as those asserted in the objection to the introduction of testimony. This motion was denied. Later and at the close of all the testimony defendant moved that the court instruct the jury to find a verdict in favor of the defendant. This motion was likewise

based on grounds similar to those urged on demurrer and motion for nonsuit. After judgment defendant presented a motion for a new trial. This motion was based on all the grounds asserted in the other motions and was likewise denied.

Defendant contends that the court erred in overruling the ▮ demurrer to the amended complaint. The demurrer was general and upon the grounds that the complaint did not state sufficient facts to constitute a cause of action. The complaint contains only general allegations of negligence. Defendant argues that it should set out the specific acts or omissions of defendant upon which recovery is sought. This court has held that negligence may be charged in general terms. (*Forquer* v. *North*, 42 Mont. 272, 112 Pac. 439; *Robinson* v. *F. W. Woolworth Co.*, 80 Mont. 431, 261 Pac. 253.) In the case of *Stokes* v. *Long*, 52 Mont. 470, 159 Pac. 28, 30, there was under consideration a complaint very similar to that in the case at bar, and it was held sufficient. The court there said: "It [the complaint] does not aver the specific act or omission of defendant upon which plaintiff bases his right to recover. The pleading is not a model, but we think it states facts sufficient to save it from condemnation."

Plaintiff sought to avail herself of the doctrine of *res ipsa loquitur*. In a case where that doctrine is applicable it is generally held that general allegations of negligence are sufficient. (45 C. J. 1082, 1225.) In 45 C. J. 1225, it is said: "In conformity with the general rule that, where a declaration based on negligence avers a particular act as the cause of the damage, plaintiff in order to recover must establish the specific negligence alleged; it is held in some jurisdictions that, where plaintiff, instead of relying upon a general allegation of negligence, sets out specifically the negligent acts or omissions complained of, the doctrine of *res ipsa loquitur* cannot be applied, even though the case was a proper one for the application of the doctrine under a general allegation of negligence only."

Under these rules it is clear that the complaint here was sufficient. The court was correct in overruling the demurrer;

and for the same reasons defendant's objection to the introduction of evidence was properly overruled.

Did the court err in denying defendant's motion for a nonsuit? In this connection defendant contends that this is an ordinary malpractice action. If that were so, then the arguments and authorities which he has set out in his brief might be of considerable weight.

The doctrine of *res ipsa loquitur* has no application to the ordinary malpractice case. (*Loudon* v. *Scott,* 58 Mont. 645, 194 Pac. 488, 12 A. L. A. 1487; *Ewing* v. *Goode,* (C. C.) 78 Fed. 442, 443.) However, there is a distinction between this case and the ordinary malpractice action. This is not a case wherein it is sought to charge the doctor with liability for alleged improper treatment with reference to the operation which he performed upon the plaintiff. It is admitted that the operation was entirely successful and satisfactory. The distinction is very well illustrated in the case of *Brown* v. *Shortlidge,* 98 Cal. App. 352, 277 Pac. 134, 135. There the court said: "This is not the ordinary case where a practitioner is sought to be charged with liability for alleged improper treatment of some bodily ailment or infirmity. He was employed to remove the adenoids from the plaintiff's throat, and there is neither claim nor proof that he did not successfully remove them. His negligence, if any, was in failing to take due care to avoid injury to the undiseased parts in the vicinity of which the operation was performed; and while it may be true that, had the operation upon the adenoids been unsuccessful and disappointing, no inference of negligence or want of skill would arise therefrom, it does not follow that this rule applies with the same force to an injury done by him to sound and undiseased parts of the plaintiff's person, which he was not called upon to treat and did not pretend to treat."

It is apparent from this illustration that there is a clear distinction between "the cases where the question of negligence depends upon the merits of a diagnosis and scientific treatment, and the cases where some ulterior act or omission occurs, the judgment of which does not require scientific opinion to throw

light upon the subject.'' (*Nicholas* v. *Jacobson,* 113 Cal. App. 382, 298 Pac. 505, 506.) We think the case at bar comes within the latter classification. (See *Maki* v. *Murray Hospital,* 91 Mont. 251, 7 Pac. (2d) 228, 231; *Johnson* v. *Herring,* 89 Mont. 420, 300 Pac. 535.)

In the case of *Maki* v. *Murray Hospital,* supra, this court held that: ''While the application of the doctrine [*res ipsa loquitur*] is usually made in view of injury by machinery and instrumentalities under the exclusive control and operation of the defendant, from its very nature as a doctrine of necessity it should apply with equal force in cases wherein medical and nursing staffs take the place of machinery and may, through carelessness or lack of skill, inflict, or permit the infliction of, injury upon a patient who is thereafter in no position to say how he received his injuries.'' Again in the same case it was said: ''While it is necessary, in every personal injury case, to prove negligence, courts, generally, recognize the fact that persons are often injured in such manner, or through such instrumentalities, that it would be impossible to prove the facts showing negligence, and yet, by common knowledge and experience, it is clear that such injury would not have been sustained, ordinarily, had the responsible party not been negligent. Under such circumstances the application of the ordinary rules of evidence would work manifest injustice and render the maxim 'for every wrong there is a remedy' (sec. 8752, Rev. Codes 1921) nugatory by denying one, patently entitled to damages, satisfaction merely because he is ignorant of facts peculiarly within the knowledge of the party who should, in all justice, pay them. Consequently, in order that justice may prevail, in such cases the courts, generally, apply the doctrine of *res ipsa loquitur,* or 'the thing speaks for itself.' ''

Where the rule of *res ipsa loquitur* is applicable, it operates to establish a prima facie case for plaintiff, which, if unexplained, carries the question of negligence to the jury. (*Lyon* v. *Chicago etc. R. Co.,* 50 Mont. 532, 148 Pac. 386; *Johnson* v. *Herring,* supra; 45 C. J. 1216, and cases cited.) It raises a rebuttable presumption that defendant was negli-

gent. (*Hardesty* v. *Largey Lumber Co.*, 34 Mont. 151, 86 Pac. 29.) The "doctrine of *res ipsa loquitur* furnishes prima facie evidence of \* \* \* negligence, entitling the plaintiff to have his case go to the jury, unless the circumstances are \* \* \* satisfactorily explained by the defendant." (*Maki* v. *Murray Hospital*, supra.)

The doctrine is applicable in this case; therefore, under the authorities, the motion for nonsuit was correctly overruled.

The next question raised by defendant in his specifications ██ ██ of error is: Did the court err in denying defendant's motion for a directed verdict? Defendant argues that, by uncontradicted evidence, he overthrew any inference or presumption of negligence arising from the application of the doctrine of *res ipsa loquitur;* in other words, he takes the position that "where plaintiff relies upon the presumption [*res ipsa loquitur*] to establish his case, the introduction of evidence of due care by defendant will make the case one for the court in the sense that the mere presumption will not be given the effect of evidence so as to raise a conflict for jury decision." (45 C. J. 1224.) There is authority sustaining this rule. The cases wherein such a rule is followed base their conclusion upon the consideration that the presumption expressed by the doctrine is not itself evidence. (45 C. J. 1224; *Lawson* v. *Mobile Electric Co.*, 204 Ala. 318, 85 So. 257.) This court has held that such a presumption is evidence. (*Maki* v. *Murray Hospital*, supra.) In that case this court said: "A presumption, which is 'a deduction which the law expressly directs to be made from particular facts' (sec. 10602, Rev. Codes 1921), is 'indirect evidence' (sec. 10600, Id.), which can only be overcome by other evidence (sec. 10604, Id.)." Again in the same case it was said: "The applicable doctrine of *res ipsa loquitur* furnishes prima facie evidence of any such negligence, entitling the plaintiff to have his case go to the jury, unless the circumstances are so satisfactorily explained by the defendant, as to cause the presumption of negligence to 'fade away in the face of contrary facts' (*Welch* v. *All Persons*, 85 Mont. 114, 278 Pac. 110, 115), or point to freedom from negligence

'with such certainty as to preclude any other reasonable hypothesis.' (*Nichols* v. *New York Life Ins. Co.*, 88 Mont. 132, 292 Pac. 253, 255.)'' (See, also, *West* v. *Wilson*, 90 Mont. 522, 4 Pac. (2d) 469; *In re Wray's Estate*, 93 Mont. 525, 19 Pac. (2d) 1051.)

''No case should ever be withdrawn from the jury, declared by statute to be the sole judges of the facts, unless the evidence is susceptible of but one construction by reasonable men, and that in favor of defendant, or where the evidence is in such condition that, if the jury were to return a verdict in favor of the plaintiff, it would become the duty of the court to set it aside.'' (*Johnson* v. *Herring,* 89 Mont. 420, 300 Pac. 535, 536.)

We are unwilling to say that the evidence in this case is susceptible of but one construction by reasonable men. ''The doctrine of *res ipsa loquitur* does not cast upon the defendant the burden of disproving negligence in the sense of making it incumbent upon him to establish freedom from negligence by a preponderance of the evidence.'' (20 R. C. L. 195; *Johnson* v. *Herring*, supra; *Maki* v. *Murray Hospital*, supra.) The doctrine does not alter the general rule that the burden is upon the plaintiff throughout the case to prove the negligence complained of. (*Lyon* v. *Chicago etc. R. Co.*, 50 Mont. 532, 148 Pac. 386; *Sweeney* v. *Erving*, 228 U. S. 233, 33 Sup. Ct. 416, 57 L. Ed. 815; annotation and collection of cases in Ann. Cas. 1914D, 908.) However, the plaintiff may establish his case (and satisfy the requirement as to burden of proof) by means of indirect or circumstantial evidence. (*Boyd* v. *Great Northern R. Co.*, 84 Mont. 84, 274 Pac. 293; *Sweeney* v. *Erving*, supra.)

In the case of *Moffett* v. *Bozeman Canning Co.*, 95 Mont. 347, 26 Pac. (2d) 973, 977, this court held that: ''A fact may be established by indirect evidence, or that which tends to establish the fact by proving another which, though true, does not of itself conclusively establish that fact, but which affords an inference (sec. 10601, Rev. Codes 1921) or presumption (sec. 10605, Id.) of its existence. * * * Further, the

solution of any issue in a civil case may rest entirely upon circumstantial evidence; the law makes no distinction as to the probative value of this class of evidence and direct evidence." (*Williams* v. *Brownfield-Canty Carpet Co.*, 95 Mont. 364, 26 Pac. (2d) 980.)

In this case, under the rule of *res ipsa loquitur*, the circumstances proved by plaintiff are such as to point by fair and reasonable inference to the conclusion that the defendant was guilty of negligence. They are sufficient to take the case out of the realm of conjecture and to support a finding by the jury that defendant was guilty of negligence. (*Boyd* v. *Great Northern R. Co.*, supra; *Johnson* v. *Herring*, supra.)

The evidence offered by defendant tended to rebut the inference arising from the prima facie case established by plaintiff, but we are unable to say that defendant's evidence was so overwhelming as to cause the presumption of negligence to "fade away in the face of contrary facts" or point to freedom from negligence "with such certainty as to preclude any other reasonable hypothesis." (*Johnson* v. *Herring*, supra.) It was for the jury to weigh the facts and circumstances proved by the defendant against the presumption upon which plaintiff relied. (*Sweeney* v. *Erving*, supra; *Johnson* v. *Herring*, supra; *Maki* v. *Murray Hospital*, supra; *Boyd* v. *Great Northern R. Co.*, supra. See, also, annotations and collection of authorities in 16 L. R. A. (n. s.) 527, and in Ann. Cas. 1914D, 908.)

The court did not err in denying defendant's motion for a directed verdict. Under the views heretofore expressed, it follows that there is no merit in defendant's assertion "that the evidence is insufficient to justify the verdict of the jury and the judgment of the court thereon."

One of the specifications of error is to the effect that "counsel for the plaintiff was guilty of reversible misconduct in injecting into the case a statement that defendant was insured." The defendant testified in his own behalf and was cross-examined by one of counsel for the plaintiff. In the course of the cross-examination defendant was asked relative

to a conversation that occurred between defendant and one of plaintiff's counsel, some time after the operation and before the trial. Counsel sought to have the defendant recall and repeat the conversation, although this conversation was not brought into the case or offered in evidence in plaintiff's case in chief. Defendant said: "I recall that at that time I stated that she received this burn while under my care as her physician while she was in the hospital, but whether in the operating room or afterwards I did not know." Counsel then asked the following question: "And that you also stated that she had a burn and had a scar and that you carried insurance to protect you against that kind of a proposition and you thought she should be compensated for it?" Counsel for the defendant made the following objection: "We object to this as improper cross-examination and we assign the same as misconduct on the part of counsel and prejudicial to the rights of the defendant." The court then said: "Yes. It is very improper and prejudicial to call the attention of the jury to the fact, if it is a fact, that such insurance exists in this case, and gentlemen of the jury in considering this case you are admonished to disregard this remark of counsel. This is the case of *Alice Vonault* v. *Dr. J. L. O'Rourke,* and that is all you are to consider. You should dismiss entirely from your minds any suggestion of insurance in this case." After asking another question or two, counsel started to propound another question, as follows: "I do not want to refer to the part the court has ruled out—" whereupon counsel for the defendant again objected and the court again emphasized his ruling in the matter of the objection and said: "Gentlemen of the jury, I will caution you again to pay no attention to remarks of counsel or to questions asked by counsel to which objection is made and objection sustained. You are to draw no inference of any kind from such remarks or questions."

Appellant vigorously urges that error was committed by the injection of the subject of insurance into the case. It will be observed that defendant's first objection to the line of cross-examination was based upon the ground that the question

constituted improper cross-examination as well as misconduct on the part of counsel. Section 10665, Revised Codes 1921, provides: "The opposite party may cross-examine the witness as to any facts stated in his direct examination or connected therewith," etc. This section permits a wide range for cross-examination, but it does not admit of examining the witness on matters not touched upon in his direct examination or connected therewith. (*Downey* v. *Northern Pacific Ry. Co.*, 72 Mont. 166, 232 Pac. 531; *State* v. *Smith*, 57 Mont. 349, 188 Pac. 644; *Alley* v. *Butte & Western Min. Co.*, 77 Mont. 477, 251 Pac. 517.)

Under the pretense of cross-examination of a witness, one party to an action cannot make out his case by witnesses for the other side. (*State* v. *Smith*, supra; *State* v. *Shannon*, 95 Mont. 280, 26 Pac. (2d) 360.) It is then manifest that the objections to the questions were properly sustained. It is clear that plaintiff, although he had a right to prove admissions against interest, had no right to prove such admissions of liability by cross-examination of the defendant. These matters were properly part of plaintiff's case in chief. No error could ordinarily be predicated upon the mere asking of the questions if the substance thereof had only included ordinary evidence admissible in support of the plaintiff's case even though it was improper to bring the alleged statements into the case on cross-examination. The injection of the matter of insurance into the case was dangerous in any event by reason of the state of the law in Montana.

This court has repeatedly condemned the injection of the insurance issue into damage actions. In the case of *Wilson* v. *Blair*, 65 Mont. 155, 211 Pac. 289, 295, 27 A. L. R. 1235, the court considered questions asked a defendant on cross-examination in a case very similar to the instant action. There the questions asked really meant just about what the question here implied. The defendant was asked if he was a member of the Medical Protective Association, and if under his contract with "them" he personally or the association would have to pay any judgment secured against him. Objection was made

and sustained to the questions and error was urged in the matter. The court said: "The obvious purpose of these statements and questions was to get before the jury such matter as that the jury might infer therefrom that some bonding company, and not the defendant, would be called upon to bear the burden of meeting any judgment rendered in this cause. Clearly none of such matter was admissible and is without the issues. Such practice is not to be commended. Having determined that this cause must be reversed and remanded upon other grounds, we do not deem it necessary to now determine whether or not the action of counsel complained of constitutes, in itself, reversible error."

In *Robinson* v. *F. W. Woolworth Co.*, 80 Mont. 431, 261 Pac. 253, the matter was touched upon incidentally by an assignment of error based upon questions asked jurors on *voir dire* examination. Defendant's counsel inquired of the jurors as to possible relations with an insurance company. The court condemned the injection of the matter into the case, and said that on that point the weight of authority and sound reason are against the privilege of asking such questions. The case was reversed on other grounds.

In *Wilson* v. *Thurston Co.*, 82 Mont. 492, 267 Pac. 801, this court reversed a judgment of a district court solely on the ground that the subject was touched upon by counsel for plaintiff in the *voir dire* examination of jurors. It there said: "Whether the defendants were protected by liability insurance or not could have no possible bearing on the question of their personal liability to respond in damages for their negligence in the operation of their automobile. The insurance company was not on trial, and the fact that by insurance contract the defendants were protected was of no concern to the jury in determination of the question as to whether the defendants through their negligence had caused the injury to plaintiff. The subject has heretofore been considered and the practice condemned by this court. * * * During the progress of the trial of the action now before us, the court used every endeavor to avoid prejudicing the jury by testimony regarding the fact

that the defendant company was insured, but such course did not remove the prejudicial effect of the error already committed. In the *Woolworth Case* we held that such questions to prospective jurors on *voir dire* examination, after seasonable objection interposed, constitute prejudicial error. And now, in view of the facts before us in this case, we are constrained to enforce the penalty and order a new trial.''

The general rule on the subject is discussed in an annotation to the case of *Stehouwer* v. *Lewis,* 74 A. L. R., found on page 849. It is as follows: ''The rule is almost universally recognized that in actions for personal injuries or death the fact that the defendant is protected by indemnity insurance against liability for damages cannot, directly or indirectly, be injected into the case by evidence, argument or remarks, so as to influence the jury, and the violation thereof is ordinarily held to be reversible error.''

In *Walter* v. *England,* 133 Cal. App. 676, 24 Pac. (2d) 930, 935, it is stated: ''It is a general rule that in this class of cases [damage] reference to the fact that a defendant is indemnified by a policy of insurance is prejudicial error, and the evil effect upon the jury of such a reference cannot be cured by striking out the testimony, nor by an admonition to the jury not to consider it in any way.''

The general rule, like most rules, is subject to an important exception—an exception as generally recognized as the rule itself. That exception is that statements as to insurance protection of a defendant may properly be admitted as a part of a statement which may be fairly construed as an acknowledgment of responsibility for the wrong charged against him.

Plaintiff cites and relies upon the late case of *Walter* v. *England,* supra. In that case the statements of the defendant were offered in plaintiff's case in chief and were clearly a part of an admission of liability made by him to the plaintiff.

In another case of a district court of appeal in California (*Schlenker* v. *Egloff,* 133 Cal. App. 393, 24 Pac. (2d) 224, 227), the question arose over the examination of a witness for the plaintiff. The policeman who arrested defendant after an

automobile accident, testified to a conversation with her and among other things said that defendant had stated that ''she had full coverage on the automobile.'' Witness said that while all of the statements of defendant were made on the evening of the accident and were made in response to approximately a dozen questions asked by him, there was no relationship of one to the other. The court said: ''The statement that she had full coverage was not made in connection with the statement that she [defendant] was going to the broadcasting station, was late and in a hurry to get there, from which an admission of responsibility for the accident might be implied; and no such implication can be made from the mere statement that she had full coverage, made possibly in answer to a question propounded or possibly from mere thankfulness that she had the foresight to carry insurance, regardless of whether she was negligent or not—a feeling that one might well have in view of the uncertainty of the verdict in a negligence case. * * * 'The natural tendency of a line of examination that suggests to the jury that the defendant is indemnified against any judgment for damages against him is highly prejudicial to his rights, especially in a closely balanced case where the evidence otherwise would be easily sufficient on appeal to support a verdict either for the plaintiff or for the defendant.' ''

Statements relative to insurance are not and cannot be admitted as independent or isolated statements of fact. They cannot be admitted to prove the fact of insurance, but only because they are a part of an admission otherwise admissible in evidence. (*Noble* v. *Bacon*, 129 Cal. App. 177, 18 Pac. (2d) 699, and cases cited; *Dullanty* v. *Smith*, 203 Cal. 621, 265 Pac. 814.)

Here, as we have indicated, the matter was improperly approached on cross-examination. A fair reading of the record as it is presented discloses that defendant had admitted, before objection was made, that he had told the attorney that plaintiff had received the burn while she was under his care as her physician and surgeon and while she was in the hospital, but whether in the operating room or afterwards he did not

know. The additional question, and the one to which the objection was sustained, in reality carried no new matter except the fact of the insurance and the statement that plaintiff should be compensated for the burn. It must be noted that the question did not state by whom the defendant said, or intended to say, that plaintiff should be compensated. It does not state that defendant said that he should compensate her; but, on the other hand, if the question related back to the immediately preceding testimony, it was easily possible to interpret the statement as meaning that someone, possibly the hospital, should be the one to compensate her. To say the most, the reference to compensation was not a definite or specific admission of personal liability.

There was nothing to prevent plaintiff's counsel from proceeding in the regular way to prove his case. He could have given his version of the conversation under oath, and that without forfeiting his right to argue the case. Later, and in rebuttal, he did become a witness as to other matters relating to that same conversation. He had no trouble in obtaining consent to testify without waiving his right to argue the cause to the jury. As the matter was presented to the witness in the presence of the jury, it was predicated upon the construction placed upon the statement by counsel. He did not presume to repeat the exact language of the whole statement. About all that can be said of the incident as a whole is that the insurance contention came out pointedly before the jury in a case wherein the whole record indicates that the issues were so evenly balanced that a verdict might have resulted either way. (See *Schlenker* v. *Egloff*, supra.) The fact that the case was one that might have been so decided is made clearly manifest from the discussion of the evidence as it was considered in the light of the motion for an instructed verdict. In that particular plaintiff was impelled to rely upon the doctrine of *res ipsa loquitur* and circumstantial evidence.

In the light of the record in this case and because the matter of insurance coverage will unquestionably arise frequently in the future, under the common practice of relying upon indem-

nity and accident insurance now so generally in vogue, we feel that it is important that the principle be safeguarded. All of this to the end that this really extraneous matter may only be called to the attention of a jury in instances where the insurance feature is unequivocally a part of an admission of liability and actually incidental to and connected with the admission. This can only be guaranteed by substantial adherence to the well-recognized rules of procedure and evidence to which we have adverted. It cannot be gainsaid that in this case, although the reference to insurance might have come before the jurors by the sworn testimony of witnesses, the fact is that the idea was conveyed to them by an improper and unwarranted question asked in cross-examination. Compare *Moffitt* v. *Ford Motor Co.*, (Cal. App.) 26 Pac. (2d) 661, 665, where it was said: "We do not understand any of the cases to go so far as to make the introduction of the subject of liability insurance fatal to a trial where it enters the case in a legitimate manner and for a legitimate purpose."

In this instance counsel departed from the rules and asked the question on cross-examination, at his peril. He assumed responsibility for the result. The judgment must be reversed.

In view of the fact that the case must go back for a new trial, it is not necessary to decide the assignment relative to excessive damages. Neither is it necessary to determine the question of alleged "misconduct of the court in commenting upon the evidence." These matters are not likely to arise in another trial of the case.

For the reasons heretofore stated, the judgment is reversed and the cause remanded to the district court of Deer Lodge county, with direction to grant a new trial.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and ANDERSON concur.

MR. JUSTICE ANGSTMAN, concurring in part and dissenting in part:

I agree with nearly all that is said in the foregoing opinion, but I do not agree that a new trial should be granted.

I do not agree that counsel for plaintiff was guilty of misconduct in the cross-examination of defendant. Defendant on his direct examination testified in detail as to how he performed the operation on plaintiff. In effect, his evidence went to show that plaintiff's injury was not produced by any act or omission of his. He said he told plaintiff the blister did not occur in the operating room, and that he told her "we could not admit any liability." I think it was entirely competent for plaintiff's counsel on cross-examination to develop the fact, if he could, that defendant had made an admission of liability to him. Our statute, section 10665, Revised Codes 1921, "permits a wide range for cross-examination, and the courts should incline to extend, rather than to restrict, the right." (*Kipp* v. *Silverman,* 25 Mont. 296, 64 Pac. 884, 888.) "Doubt respecting the limits to which cross-examination may go ought usually, if not always, to be resolved against the objection." (*Cobban* v. *Hecklen,* 27 Mont. 245, 70 Pac. 805, 811.)

In 40 Cyc. 2484, it is said: "It is proper cross-examination to interrogate a witness as to facts or circumstances inconsistent with his testimony, or conduct on his part at variance with what would be natural or probable if his statements on his direct examination were true." And on page 2486 it is said: "A witness may be interrogated on cross-examination as to statements which he has made to others with respect to the matters as to which he has testified, especially where the alleged statements as to which he is questioned were inconsistent with his testimony. * * * So also a witness may be interrogated as to admissions against interest of the party for whom he has testified."

It seems to me that the right of cross-examination is unduly restricted if plaintiff cannot, after defendant has related his version of what transpired in such a manner as to negative liability, elicit on cross-examination of defendant an admission by him of liability. Obviously that was the purpose of asking the question complained of. The question was: "And that you also stated that she had a burn and had a scar and that

you carried insurance to protect you against that kind of a proposition, and you thought she should be compensated for it?"

The fact that, coupled with the admission of liability, there was reference to insurance, is no objection to the admissibility of the admission. In 56 A. L. R. 1448, it is said: "Evidence showing an admission of liability by the defendant may properly be admitted, although it is developed that in making the admission the defendant stated that he carried liability insurance. Thus, the fact that the defendant in an automobile accident case is insured against liability does not render him immune from having his admissions used against him, when favorable to the plaintiff; and if, in placing before the jury a statement made by him, or conversations in which he indulged, which tend to show such admissions, it appears as a part thereof that he is so protected, he has only himself to blame therefor." In addition to the cases there cited, see the long list of cases to the same effect in the note in 74 A. L. R. 856.

The rule is well stated in *Dullanty* v. *Smith*, 203 Cal. 621, 265 Pac. 814, 816, where the court said: "The fact that this testimony contained, in addition to unobjectionable matter, references to the insurance of defendant did not necessarily make it inadmissible for all purposes. It is true that the court frowns upon any attempt to show that a defendant carries indemnity insurance, but where, as here, there is an entire absence of any indication whatsoever of lack of good faith on the part of plaintiff, evidence of this character, as an admission against interest, or for certain other purposes, may be received, notwithstanding the fact that it contains material which under other circumstances would be objectionable."

My associates concede this to be the rule, but condemn the question here because it was propounded on cross-examination of defendant instead of as a part of plaintiff's case in chief. I see no reason for drawing this distinction. It seems to me it is going a long way to impute bad faith on the part of counsel in asking the question in the face of the authorities

holding that the evidence is admissible under the exception to the general rule.

The suggestion in the majority opinion that the record already disclosed everything attempted to be brought out by the question, except the matter of insurance, is, I think, unwarranted. All that defendant had admitted stating to plaintiff's counsel before the question complained of was asked, was that plaintiff had received the burn while she was under his care and while she was in the hospital. The question complained of was designed to bring out the admission that defendant, and not the hospital, was responsible for plaintiff's injury, and, incidentally and as a part of the admission, that defendant was protected by insurance against such acts. Plaintiff's counsel in rebuttal testified regarding what defendant told him, as follows: "Dr. O'Rourke finally stated that there was no question but that Mrs. Vonault was burnt; that she was burnt while she was under his care as her physician in charge of the operating case, and that he felt that he was responsible for it. He made the further suggestion that he hadn't received any compensation for performing his operation, and he felt that if he cancelled the obligation of $250 for the performance of this operation that should satisfy Mrs. Vonault and we should drop the whole thing and consider it as settled."

My associates point out that plaintiff's counsel when thus relating what defendant told him made no reference to the insurance. But, as pointed out in the majority opinion, the court twice ruled that all evidence relating to the question of insurance was improper. Plaintiff's counsel evidently refrained from relating the statement of defendant on this subject out of respect for the court's ruling and to avoid the possibility of being adjudged in contempt. (*State ex rel. Hurley* v. *District Court*, 76 Mont. 222, 246 Pac. 250.)

There is another reason why a new trial should not be awarded here. The question propounded was never answered. The court sustained the objection to it. It went further and admonished the jury to disregard the remarks concerning in-

surance. In the case of *Pascoe* v. *Nelson*, 52 Mont. 405, 158 Pac. 317, 318, the court had this identical question before it, and Mr. Justice Holloway, speaking for the court, said: "Assuming, however, that counsel made the remarks attributed to him, a proper admonition to the jury to disregard them ought to have been sufficient. So long as the jury system is in vogue courts must assume that jurors possess sufficient intelligence and force of character to discharge their duty when properly directed." This case has not yet been overruled but was followed, and the rule there stated applied in *Kelly* v. *John R. Daily Co.*, 56 Mont. 63, 181 Pac. 326.

What else can or must the trial judge do to keep from being put in error? Must he go on with the trial, waste his and the jury's time, and then, after verdict against defendant, grant a motion for a new trial? It may be suggested that the trial court should have ordered a mistrial, summoned a new jury, and called for a new deal. If this is the proper course, must he do it of his own motion or only on motion of the party aggrieved? I think if defendant was not satisfied by having his objection sustained, the offered evidence excluded, and the jury admonished to disregard all reference to insurance, he should have moved for a mistrial, as was done in the case of *Moffitt* v. *Ford Motor Co.*, (Cal. App.) 26 Pac. (2d) 661. This he did not do but took his chances with the jury then impaneled. Reason and authority support the view that he cannot now urge the alleged misconduct in support of a motion for a new trial. This question, under identical circumstances, was before the supreme court of North Carolina, in *Allen* v. *Garibaldi*, 187 N. C. 798, 123 S. E. 66, 67, where the court disposed of it as follows: "We think the defendant's motion for a new trial, after verdict, upon the ground stated, must be overruled. The court sustained the defendant's objection, and this was all that he was asked to do at the time. There was no motion for a mistrial, or venire *de novo* because of these alleged improper questions. Defendant elected to proceed with the trial and to take his chances with the jury as then impaneled. Indeed, it appears

that counsel for both sides, during the argument, cautioned the jury to disregard the suggestion of liability insurance, as there was no evidence in the case tending to show its existence. Evidently the defendant did not consider it of sufficient importance on the trial to ask that a juror be withdrawn and a mistrial entered.'' To the same general effect are *Continental Casualty Co.* v. *Pouquette*, (C. C. A.) 28 Fed. (2d) 958; *Sautter* v. *Rowland*, 285 Pa. 212, 131 Atl. 733; *Jackson* v. *Atwood*, 194 Ind. 56, 140 N. E. 549; compare, also, *Smith* v. *Wilson*, (Mo. App.) 296 S. W. 1036; *Brooklyn Heights R. Co.* v. *Ploxin*, (C. C. A.) 294 Fed. 68; *Merritt* v. *Central of Georgia R. Co.*, 28 Ga. App. 746, 113 S. E. 62; *Ramseyer* v. *Dennis*, 187 Ind. 420, 116 N. E. 417, 119 N. E. 716; *Rostad* v. *Portland Ry. etc. Co.*, 101 Or. 569, 201 Pac. 184. The case of *Wilson* v. *Thurston Co.*, 82 Mont. 492, 267 Pac. 801, does not militate against this view, for there the trial court committed error in overruling the objection to questions propounded to eight jurors on the subject of their connection with insurance companies.

I think the trial court properly denied the motion for a new trial and that the judgment should be affirmed.