SIMONS, APPELLANT, *v.* JENNINGS ET AL., RESPONDENTS.

(No. 7,382.)

(Submitted May 2, 1935. Decided May 24, 1935.)

[46 Pac. (2d) 704.]

58

██ 

*Mr. Walter H. Hanson,* of the Bar of Wallace, Idaho, *Mr. Harry H. Parsons,* of the Bar of San Bernardino, California, *Mr. E. C. Kurtz* and *Mr. H. L. Maury,* for Appellant, submitted a brief; *Mr. Maury* argued the cause orally.

*Messrs. Murphy & Whitlock,* for Respondents, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Missoula county. The plaintiff, appellant here, instituted an action against the Northern Pacific Railway Company, Northern Pacific Hospital Association, Northern Pacific Beneficial Association, and Drs. George M. Jennings, A. T. Haas and A. R. Foss. The case went to trial against all of the defendants in the first instance. Verdicts were ordered peremptorily in favor of all defendants, and judgment was entered accordingly. Appeal was taken to this court by the plaintiff, and the judgment was affirmed as to all of the defendants, except the three Drs. Jennings, Haas and Foss; as to them the judgment was reversed and a new trial ordered. At the second trial individual verdicts were returned in favor of the remaining defendants, and judgment was entered in their favor.

Plaintiff has again appealed, and the matter is before us on the original pleadings and a new trial record. In the brief, plaintiff's counsel say: "For a statement of the case we can do no better than to copy largely from the statement of facts set forth in the opinion of the court in *Simons* v. *Northern Pac. R. Co.,* 94 Mont. 355, 22 Pac. (2d) 609" (the opinion rendered on

the original appeal). We agree with counsel that the statement made by this court, and contained in the opinion cited, makes it unnecessary to restate the facts. A careful perusal of the records in both appeals discloses that the facts and the evidence adduced at the two trials differ in only a few particulars. These differences will be taken into consideration in the treatment of the assignments of error. We therefore refer to the former opinion for a detailed statement of facts.

The first specification of error urged is that the court erred in refusing to sustain plaintiff's challenge to a juror, J. Cummings. From the *voir dire* examination of Cummings it appears that he had attended a portion of the previous trial and had heard some of the witnesses testify, and that he was an employee of the Northern Pacific Railway Company and a member of the Northern Pacific Hospital Association, originally defendants in the action. Plaintiff's counsel interposed a challenge as follows: "I think, your Honor, that these people who have sat here during a previous trial and listened to the witnesses, and didn't hear all the witnesses, in the discretion of the court, should be excused. I advance a challenge on that ground." This was the only ground asserted for the challenge of the juror; no other ground of challenge was advanced or urged.

Section 9344, Revised Codes 1921, specifically enumerates the grounds upon which a challenge of a juror may be based. The ground upon which counsel based the challenge is not one of the grounds specified in that section. However, plaintiff apparently takes the position that the ground urged comes within the meaning of subdivision 6 thereof, viz.: "Having an unqualified opinion or belief as to the merits of the action." The record discloses that, while Juror Cummings had heard some of the testimony at the previous trial, still he testified upon his *voir dire* examination that he had no opinion or impression at the time when challenged as to who should prevail; that he could not remember anything he had heard at the previous trial; and that he could and would try the case fairly and impartially. In other words, even if the challenge can be said to be sufficient

under subdivision 6 of section 9344, a point not decided here, the facts shown fail to show disqualification upon that ground.

It has been quite generally held, under statutes practically identical to our own, that the challenging party must bring himself within the provisions of the statute, and must specify one or more of the grounds set forth therein, and the specific ground of challenge relied upon must be stated. (See *Paige* v. *O'Neal,* 12 Cal. 483; *People* v. *Buckley,* 49 Cal. 241; *State* v. *Gordon,* 5 Idaho, 297, 48 Pac. 1061; *People* v. *Owens,* 123 Cal. 482, 56 Pac. 251; *Encinas* v. *State,* 26 Ariz. 24, 221 Pac. 232.)

It is also the rule that only the ground of challenge specified may be relied upon. (*Mitchell* v. *Swanwood Coal Co.,* 182 Iowa, 1001, 166 N. W. 391, 394.) In the last-cited case it was said: "The court is not called upon to determine the qualification of the juror, except as to the matter upon which his qualification is challenged. The error, if any, in the ruling, must be found in the facts disclosed, and the challenge must have its basis in the facts disclosed. All other grounds of challenge are waived when a specific ground is selected on which to base the challenge, and on appeal no ground will be considered, except that urged as a basis for excusing the juror, though other grounds may appear in the record upon which a challenge might have been well based."

There is no merit in the argument that Cummings was disqualified because he was an employee of the Northern Pacific Railway Company, and a member of the Northern Pacific Beneficial Association, former defendants in the action. These facts were not urged as grounds for his disqualification. Under the foregoing authority, they cannot be considered on this appeal for the first time.

The fact that a juror has heard some of the testimony at the former trial is not one of the grounds specified in section 9344, supra, upon which a challenge may be based. Indeed, it has been specifically held that such a fact does not necessarily disqualify the juror. (*State* v. *Prins,* 117 Iowa, 505, 91 N. W. 758; *Smith* v. *State,* 207 Ala. 428, 93 So. 397; 35 C. J. 347.)

The court exercises its discretion in the matter of passing upon the qualifications of a juror, and its determination will not be disturbed unless there has been an abuse of that discretion. (*State* v. *Juhrey,* 61 Mont. 413, 202 Pac. 762; *County of Mono* v. *Flanigan,* 130 Cal. 105, 62 Pac. 293; *Graybill* v. *De Young,* 146 Cal. 421, 80 Pac. 618.) We fail to find that the court in refusing to sustain plaintiff's challenge to the juror Cummings abused its discretion.

It is next contended that the jury should have been instructed that, so far as plaintiff was concerned, the defendants Foss, Haas and Jennings were general partners, and that she was the patient of the partnership. Plaintiff requested the court to give an instruction to that effect, and it was refused. Instead the court submitted the question whether plaintiff was the patient of the partnership or of Dr. Foss only. Several instructions bearing upon the question of partnership, and the liability of partners, were given at the request of plaintiff. One was to the effect that if the defendants held themselves out as partners and that such holding out was communicated to plaintiff, she was entitled to recover against all three of them for any negligence on the part of the nurse which resulted in damage to her. They were also told that if they found that plaintiff expected to receive the benefit of the experience of the firm, as distinguished from an individual doctor, then she was not bound by any secret limitation between them not known to her.

Plaintiff contends that the court erred in refusing to remove the question of partnership from the consideration of the jury, that there was no conflict in the testimony as to the partnership relation, and that the instruction to consider this question tended to confusion in the minds of the jury.

The rule is well established that a fact question should not be taken from the jury unless only one conclusion might be drawn by reasonably prudent men. (*Puutio* v. *Roman,* 76 Mont. 105, 245 Pac. 523; *Maki* v. *Murray Hospital,* 91 Mont. 251, 7 Pac. (2d) 228; *Nord* v. *Boston & Montana etc. Co.,* 30 Mont. 48, 75 Pac. 681; *Vonault* v. *O'Rourke,* 97 Mont. 92, 33 Pac. (2d) 535; *First National Bank* v. *Wilson,* 57 Mont. 384, 188 Pac. 371, 373.)

In the last-cited case this court said: "The fact that testimony is uncontradicted is not alone sufficient to warrant a directed verdict, where the inferences to be drawn from all the circumstances are open to different conclusions by reasonable men." The rule is equally well established that although certain testimony may not be directly contradicted, the jury is not precluded from rejecting it if they so desire. (*Ashley* v. *Telephone Co.*, 25 Mont. 286, 64 Pac. 765; *Emerson* v. *Butte Electric R. Co.*, 46 Mont. 454, 129 Pac. 319.)

Here the record discloses that the testimony as to what the ▮ actual arrangement was among the three doctors is not in dispute. All three of them testified to that arrangement. It is apparent that the only theory upon which they could be held liable as partners is the theory of estoppel, or holding out as partners, and reliance thereon by plaintiff. In this connection plaintiff testified that it was her impression that they were partners; that she had heard them spoken of as Drs. Jennings, Haas and Foss; that she looked upon them as partners. She also introduced in evidence certain billheads used by the doctors for the purpose of showing that they held themselves out to the public as a partnership. On the other hand, it appears that plaintiff had no transaction whatever with Dr. Jennings at any time prior to the occurrence of the alleged injury; that she first went to Dr. Haas, and he told her that he did not treat the kind of cases about which she inquired. He referred her to Dr. Foss and suggested that she make an appointment with him. She then made an appointment with Dr. Foss, and thereafter she had nothing to do with either of the doctors until after the alleged accident. Dr. Foss testified that she was his personal patient, and that the other doctors were not to share in the compensation received from her.

This brief recital of the evidence is, we believe, sufficient to make it clear that there was at least some conflict in the evidence upon the question. Certainly, it cannot be said that only one conclusion might be drawn from this evidence by reasonably prudent men. It was clearly a question for the jury to say whether or not plaintiff was at the time in question a patient

of the three doctors or of Dr. Foss alone. In addition to the authorities to which we have already referred, we are further fortified in this conclusion by the decision of this court on the former appeal (*Simons* v. *Northern Pac. R. Co.*, 94 Mont. 355, 22 Pac. (2d) 609, 616), wherein it was said: "The question whether the plaintiff was the patient of the firm or of Dr. Foss alone was for the jury to determine." The facts relating to the matter of partnership liability there were substantially the same as those presented in the case now before us.

The foregoing also disposes of plaintiff's contention that the court erred in giving instruction No. 7, over her objection. This instruction told the jury that if the patient was the patient of Dr. Foss, then the other defendants could not be held. As we have already indicated, this was a proper question for the jury to decide.

Error is predicated upon the giving of defendants' offered instruction No. 14, which reads as follows: "You are instructed that plaintiff in this case can place no reliance upon the manner in which the drugs were kept or labeled in the room in the hospital where the irrigation in question was given. The court instructs you that there is no evidence of negligence in that regard."

Plaintiff argues that the evidence is full and complete that defendants kept drugs in a negligent manner in the hospital room where the irrigation was given. Evidence was adduced showing certain precautions usually taken by druggists in marking poisons, such as the practice of coloring bichloride solution blue and placing it in irregularly shaped bottles. Dr. McCullough, testifying on behalf of plaintiff, said that he had seen precautions of this character followed in hospitals; however, he did not say that this was a fixed or a general practice followed by most hospitals. Other doctors and the nurse, Miss Cass, testified that there was no fixed practice of keeping such drugs in hospitals. They pointed out that there is a distinction in this respect between drug stores and hospitals. Such a distinction was recognized and discussed by this court in the decision which it rendered on the former appeal. Indeed, we are constrained

to hold here, just as we did on the former appeal, that: "It was not shown that this method was contrary to approved custom or practice in such institutions, and the recommendations of authorities that such a drug as was here used should be kept in odd-shaped bottles and colored, have reference to the sale over the counter by drug stores, rather than to hospitals; to prevent mistakes, after the drug has passed into the hands of those not familiar with it. The evidence fails to prove the charge of negligence in pursuing the method adopted." The court did not err in giving the instruction.

However, the matter is of no great importance, because, even if it had been shown that defendants were negligent in this respect as plaintiff asserts, still the presence of the drugs in the surgery and the method of keeping them was at best a mere condition, as distinguished from a cause. (*Andree* v. *Anaconda Copper Min. Co.,* 47 Mont. 554, 133 Pac. 1090; *Monson* v. *La France Copper Co.,* 39 Mont. 50, 101 Pac. 243, 133 Am. St. Rep. 549; *Staff* v. *Montana Petroleum Co.,* 88 Mont. 145, 291 Pac. 1042.) The proximate cause of the alleged injury would be the act of the nurse in administering the drug, rather than the manner of keeping the drugs, which was merely a condition. We recognized this principle of law in the opinion rendered on the former appeal, wherein it was said: "These charges of negligence have reference to a condition which could only cause injury through some human agency and could only become factors in establishing liability, if proved, on showing negligence, on the part of an agent or employee of the defendants, for whose acts they, or some one or more of them, may be held legally responsible." It is obvious that the question here under consideration was put at rest on the former appeal.

Plaintiff contends that she was entitled to have the jury directed peremptorily to find a verdict in her favor against defendants. At the close of the evidence the plaintiff interposed the following motion: "Now comes the plaintiff, Edna Simons, and respectfully moves the court that the court instruct the jury peremptorily to find a verdict in favor of the plaintiff and against each and all of the defendants, submitting to the jury

only the question of the amount of damages which have been caused the plaintiff by the negligence and malpractice of the defendants." Error is assigned on account of the court's refusal.

Such an instruction would obviously have removed from the jury's consideration the question whether plaintiff was the patient of all three doctors or of Dr. Foss alone. As we have already pointed out, that was a question of fact to be submitted to the jury under proper instructions. That is exactly what the court did do. It follows, then, as a matter of course, that to this extent at least the instruction in question was erroneous, in that it would have taken from the jury a question which was properly submitted.

The instruction would also have removed from the jury's consideration the question whether a mistake was actually made by the nurse, and, if so, whether any damage resulted. Plaintiff contends that these questions should have been withheld from the consideration of the jury; that there was no conflict in the evidence; and that all the legal and substantial evidence indicates that the nurse did make a mistake, and that plaintiff suffered injury as a result of that mistake. It is argued that, since "Miss Helen Cass, the nurse, says that she used bichloride of mercury of a percentage of about 1 to 250, any other testimony to the contrary is purely speculative and matter merely of conjecture."

If the nurse had testified that she knew positively that she had made a mistake and that she had used the bichloride of mercury, then there might be much force to the argument. However, the nurse only said that she thought she had made a mistake; and in explanation of her testimony she stated that she had no positive knowledge of what solution she used, that she did not intend to use bichloride of mercury. Thus her testimony falls short of being absolute and positive evidence of the fact that a mistake was made. It is at best only strong circumstantial evidence of that fact. As against this evidence, the record discloses some evidence which tends to show that the nurse may not have made such a mistake, in spite of the fact

that she thought she had. She testified that she had no consciousness of having used the bichloride. There was only one bottle of bichloride solution in the room, and the nurse testified as to the position of that bottle upon the shelf, with reference to the position of other bottles containing various other drugs which sat upon the same shelf. Plaintiff testified that she saw the nurse take the bottle from the shelf and that she took the bottle which stood on the shelf and "nearest the window." The nurse testified that the bichloride bottle was out of line with the other bottles upon the shelf, and it was due largely to this fact that she concluded, after complaint by the patient, that she had made a mistake. However, she stated positively that the bottle which was out of line was not the bottle which stood on the shelf nearest the window; that it was not the end bottle but was in the middle of a line of bottles. In other words, the testimony of the nurse is positive to the effect that the only bottle which contained bichloride was not located at the end of the line of bottles on the shelf, and the testimony of plaintiff is equally positive that it was the end bottle that was used. From such a conflict in the evidence different conclusions may be drawn, and it became a matter of weight as to what the fact really was. It was a situation wherein it was possible for a reasonable person to draw more than one conclusion, and therefore it was a proper question for the jury. (*Bell* v. *Grimstad,* 82 Mont. 185, 266 Pac. 394; *First National Bank* v. *Montana Cattle Loan Co.,* 72 Mont. 419, 234 Pac. 256; *Vonault* v. *O'Rourke,* supra.)

It is argued that the evidence of the subsequent symptoms of plaintiff and the manner in which she was treated for those symptoms shows conclusively that a mistake was made, and that the defendant doctors considered that such had been the case. To a certain extent this is true. However, here again we find some conflict in the evidence. There is testimony to the effect that all of the symptoms displayed by the plaintiff might be explained by and attributed to the ailment (cystitis) from which she was suffering at the time; there is evidence that the application of the liquid used upon the bare hand did no damage;

that cystitis might cause pieces to slough off from the interior of the bladder; that the presence of cystitis would account for the pain of which plaintiff complained and the frequency of urination; that an inflamed bladder in a case of cystitis would account for hemorrhagic spots; that cystitis usually causes more or less redness inside the bladder and will sometimes cause mucous shreds to appear in the urine; that if an effort were made to introduce a strong solution such as bichloride into the human bladder through a catheter, the tendency of that organ would be to immediately repel the liquid and thus make it very difficult to introduce any substantial amount. Dr. Foss testified that when plaintiff returned to the hospital in the evening, following the alleged injury, he made a local examination and found her organs normal on the outside. Other doctors testified that they found no evidence of systemic poisoning.

Briefly, there was evidence indicating the difficulty of introducing bichloride into the human bladder; that there was no indication of systemic poisoning; that a cystoscopic examination was made and it disclosed no damage other than might have been caused by the introduction of instruments; and that the condition found here might well be attributed to cystitis, which was admittedly present in this case. All this evidence, if believed by the jury, might have led them to the conclusion that the alleged mistake was not in fact made, or, if it was made, no sufficient quantity of the solution reached the bladder to cause damage. In any event, it was the province of the jury to pass upon the credibility of such evidence and determine the weight to be given to it; to balance this evidence as against the evidence upon which plaintiff relied, and determine therefrom whether a mistake was made and, if so, whether plaintiff suffered any damage as a result thereof. With such a conflict in the evidence it was clearly a question for the jury to determine upon proper instructions by the court. The court was correct in refusing to grant the peremptory instruction as requested by plaintiff. (See *Bell* v. *Grimstad,* supra; *First National Bank* v. *Montana Cattle Loan Co.,* supra; *Puutio* v. *Roman,* supra; *Nord*

68

v. *Boston & Montana etc. Co.,* supra; *Maki* v. *Murray Hospital,*
supra; *Vonault* v. *O'Rourke,* supra.)

Complaint is made of the court's refusal to give plaintiff's
 offered instruction G. This instruction stated in sub-
stance that Helen Cass might have been the servant or employee
of the present defendants, and at the same time the servant of
the Beneficial Association and of the railway company, and that
each and all of them under those circumstances would be liable
for any negligent conduct on her part. The Beneficial Associa-
tion and the railway company were no longer parties to this
action at the time of the trial. Thus we think there is merit in
the suggestion advanced by defendants that this instruction in
suggesting a possible liability on their part, when they had al-
ready been excused from liability, could serve no other purpose
except to confuse the jury and suggest issues not actually in-
volved in the case at the time. In any event, plaintiff suffered
no prejudice from the refusal of the instruction, because the
court did instruct the jury quite fully upon the question of the
liability of the defendants for any negligent conduct on the
part of Miss Cass. The instructions which were given upon this
point impress us as being as fair and favorable to plaintiff as
they could possibly be.

Error is predicated upon the court's refusal to give plaintiff's
 offered instruction H, which in substance sets forth the
duty of the doctors after they had reasonable grounds to believe
that a mistake had been made, and imposes liability in case of
wilful or negligent abandonment by the doctors. We think this
instruction was properly refused. The evidence shows that the
nurse drained the solution from the bladder as soon as she be-
came aware of the possibility of mistake, and that she flushed
the bladder with sterile water to remove the substance. She
did this before she left the patient to call the doctors, and she
advised them of her actions at the time she reported the facts
of the occurrence to them. Plaintiff was advised to remain in
the hospital under observation, but this she refused to do.
There is no evidence of neglect or failure properly to treat plain-

tiff. It was generally agreed by all of the medical witnesses that the treatment accorded after the alleged error was discovered was proper and appropriate. There is nothing in the record to suggest that the patient was abandoned, neglected or improperly treated by the doctors after their attention was directed to the matter.

Whatever may have been the cause of the distress of plaintiff, the facts stand out that the nurse and the defendant doctors moved rapidly to relieve her from any evil effects. She insisted upon going home and did so contrary to the advice of the doctors. She was returned a few hours later and thereafter was under the constant care of some or all of the doctors until she was discharged some days later. Under such circumstances it is obvious that there was no justification for an instruction submitting to the jury the question of neglect or abandonment.

For the same reasons the court was correct in refusing to give plaintiff's offered instruction I, which would have advised the jury that the responsibility of a surgeon once employed continued until he was discharged.

Plaintiff complains of given instruction No. 13, which reads as follows: "You are instructed that in so far as plaintiff relies upon alleged negligence in treatment after the irrigation of January 21, the physician in charge may act in the light of the facts known by him or which should have been known in the exercise of reasonable care or reported to him as to what had or was supposed to have transpired. If in the light of all those facts he employed such treatment as sound professional judgment would dictate in such case, then you shall find for defendants on that issue." We are of the opinion that this instruction is perfectly fair under the facts in this case, and that it contains a correct statement of the legal principle involved; at least no authority has been cited to us that would indicate the contrary. There is no foundation under the facts as presented for the suggestion advanced by plaintiff that under this instruction, if a nurse carelessly poisoned a patient, the physician would be absolved from liability if the nurse falsely re-

ported to him that no poison had been administered. The instruction justifies no such conclusion. Moreover, there is no evidence here that the nurse reported anything other than the facts as she thought them to exist.

Plaintiff assigns as error the court's refusal to give her offered instructions, K, L, M, N, O and P, all of which relate to the matter of partnership. The court in its instructions to the jury covered the questions pertaining to partnership and liability as such quite thoroughly. Instructions numbered 20, 22, 23, 24 and 25 all relate to the matter of partnership, the requirements necessary to establish the same, liability for the acts of partners, etc. In fact, the court included in these instructions everything pertaining to the question of partnership that plaintiff was entitled to have submitted to the jury. Indeed, it would be difficult to conceive any instructions that would cover the subject in a more fair and comprehensive manner. Certainly, the instructions given are just as favorable to plaintiff as any instructions upon the subject could possibly be. Plaintiff suffered no prejudice from the refusal to give any other instructions upon that particular point.

Error is assigned upon the giving of instructions 3 and 4, which stated, in effect, that the burden was upon the plaintiff, and remained upon her throughout the trial to prove the facts necessary to establish her cause of action. Plaintiff objected to these instructions, and insists that they were erroneous in that they placed the burden on her "throughout the trial," rather than "until the close of the evidence." This contention is without merit. The instruction contains a correct statement of the law as announced not only by this court but also by the authorities generally. (See *Vonault* v. *O'Rourke*, supra; *Lyon* v. *Chicago etc. R. Co.*, 50 Mont. 532, 148 Pac. 386; *Hill* v. *Smith*, 260 U. S. 592, 43 Sup. Ct. 219, 67 L. Ed. 419; 5 Wigmore on Evidence, sec. 2489.)

Plaintiff complains of instruction No. 6, given by the court, wherein the jury was instructed that there was no personal negligence on the part of the defendants, and that liabil-

ity, if it existed, must be based upon responsibility for the acts of the nurse. Plaintiff objected to the instruction on the ground that it invaded the province of the jury. The instruction is clearly a correct statement of the law and is in accordance with the decision which was rendered on the former appeal of this case, wherein it was said: "If the doctor, or firm of doctors, is liable in this action, it is under the doctrine of *respondeat superior*, in so far, at least, as the initial injury is concerned."

Finally error is predicated upon instruction No. 15, which reads as follows: "You are instructed that the law requires but one degree of care. That degree is known as ordinary care, or that degree of care which ordinarily prudent persons in the same line of business and under the same circumstances usually exercise, but ordinary care is measured by and equal to and proportionate with the danger involved." The instruction as originally tendered by plaintiff (in addition to the above-quoted instruction given by the court) also contained the following language which was stricken by the court: "of substance handled, dealt in, used or exposed to the injury of others; what conduct might be ordinary care in handling a substance of little danger to the lives and safety of others might be negligence in handling poisons or other substances or forces of great danger to life and safety."

Plaintiff urges that the court erred in striking this portion from the instruction, and argues that the instruction as given is unintelligible and useless. We are of the opinion that the instruction as given correctly defines the degree of care required to be used. It states that ordinary care is proportionate to the danger involved. There is no merit in the suggestion that it is unintelligible. The language which was eliminated was merely of an illustrative nature, and did not amplify or tend to make any more intelligible the principle of law announced. Plaintiff could not possibly have suffered any prejudice from the elimination of that language from the instruction.

After a careful examination and consideration of all the specifications of error urged by plaintiff, we are constrained to hold

that no prejudicial error has been committed. Accordingly the judgment is affirmed.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the foregoing decision.

Rehearing denied July 10, 1935.