BENNETT, Respondent, *v.* GUSDORF, Appellant.

(No. 7,441.)

(Submitted October 30, 1935.   Decided November 29, 1935.)

[53 Pac. (2d) 91.]

40

*Mr. John K. Claxton, Mr. W. D. Kyle* and *Mr. J. A. Poore,* for Appellant, submitted a brief; *Mr. Poore* argued the cause orally.

*Mr. A. G. Shone* and *Mr. H. L. Maury,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

On May 21, 1933, while the defendant Alfred Gusdorf was operating a photo shop in Butte, plaintiff, Helen Bennett, a girl nineteen years of age, in company with several other girls, entered defendant's shop for the purpose of having a group picture taken.

After the group had been photographed, plaintiff requested defendant to take a picture of her individually with the understanding that if the proofs were satisfactory she might order a number of finished photographs. Thereafter plaintiff sent for and received proofs of the individual sittings, but never ordered any photographs developed therefrom. Some time later defendant developed and finished one of the negatives and placed the finished photograph in his studio window.

Subsequently defendant entered into an advertising or promotional scheme with one Dave Binnard, whereby defendant was to furnish Binnard with a number of photographs of different people as samples of his workmanship and Binnard was to furnish a certain type of coupons. The photographs and coupons were taken by Binnard and distributed to various grocery stores, drug stores, etc., in Butte and surrounding towns.

In each instance where an agreement was made with the proprietor of a business a photograph was furnished and placed in the show window or in some other conspicuous place in the business establishment, along with a notice to the effect that coupons would be given away to purchasers of merchandise, and that when a certain amount of merchandise had been purchased, the purchaser might have his coupon punched out and the coupon along with 49 cents would entitle the holder to have a photo taken at defendant's photo shop. The purpose of this scheme was, of course, to promote business for defendant as well as for those establishments which displayed the photographs and gave away coupons to purchasers of their merchandise. Among the photographs furnished by defendant to Binnard were several of plaintiff, which had been developed from the negatives of plaintiff's individual sitting. In this manner plaintiff's picture was displayed in several business places in and around Butte for several months (from the latter part of May, 1933, to the first part of January, 1934). In January, 1934, plaintiff filed this action for damages, for the unauthorized use of her photograph in the manner indicated. In addition to the facts recited, plaintiff alleged that at the time defendant took her individual picture she advised and admonished him that she did not want her photograph enlarged or placed in his studio window or exhibited in any other window or place for public inspection; that by his failure to observe this admonition and by circulating and exhibiting her photograph defendant caused her to become the common talk of the public in Butte, particularly among her friends and acquaintances; that it was understood and believed by people generally that plaintiff had, for hire, permitted her picture to be used by defendant as a public advertisement; that as a result thereof plaintiff's right of privacy to her picture was destroyed; that she was humiliated, annoyed, and disgraced and exposed to public contempt and ridicule; and that by reason of this she suffered great mental anguish and was injured in her character and reputation, to her damage in the sum of $10,000.

In his answer defendant admitted taking the photograph pursuant to the usual manner and course of dealing followed by him in his business. He alleged that plaintiff promised to accept and purchase finished pictures from him; that she ordered twelve photographs at the price of $4.75; that he developed the films and furnished proofs thereof to plaintiff's mother; that the proofs were never returned to him, and that plaintiff never paid defendant for the sitting or the development of the pictures, all of which had been done at her special instance and request. Defendant further claimed that plaintiff never at any time objected to the use of her pictures by him, and that she never admonished him not to use or display her picture; that plaintiff breached her contract to pay for the negatives and pictures made therefrom, and, as a result of such failure, she forfeited all right thereto and the same became the sole and exclusive property of defendant.

The cause was tried to the court sitting with a jury, and resulted in a verdict for plaintiff in the sum of $5,000, upon which judgment was entered. Defendant moved for a new trial, which was denied; thereafter he appealed from the judgment.

While several specifications are urged, the most important question involved is whether the complaint states facts sufficient to constitute a cause of action. The right of defendant to raise this question was preserved both by a general demurrer to the complaint, and an objection to the introduction of any testimony in support thereof.

At the outset, defendant asserts that the complaint does not state a cause of action upon the theory of libel or slander. In this contention he is undoubtedly correct. In fact, it is virtually conceded by plaintiff that she did not attempt or intend to state a cause of action upon such a theory. Defendant insists that, failing to state a cause of action upon this theory, the complaint cannot be sustained; that there is no other possible theory or right of action which would entitle the plaintiff to a recovery of damages upon a state of facts such as are shown in this case. He argues that plaintiff obviously endeavored to state a cause of action ''in tort for damages for interference with

plaintiff's right of privacy," but that no such right of action existed at common law, and that there is no statute of this state which recognizes or authorizes such an action. Pursuant to this line of argument, defendant cites and relies upon the case of *Conley* v. *Conley*, 92 Mont. 425, 15 Pac. (2d) 922, 925, wherein it was held that, "where a right sought to be asserted was not known to the common law at the time it became a part of the jurisprudence of this state, 'authority for the right, if it exists, must be found in the Acts of the Legislature.' "

Counsel for both sides in their briefs and arguments have devoted considerable time and space to the question of whether there is a right of action, either under the common law or the statutes of this state, for damages for interference with the right of privacy. The able arguments of counsel and the numerous authorities cited by them indicate that there is, among the authorities generally, considerable confusion and conflict of views upon this question. Some courts have held that there is no such right of action under the common law. Such was the holding in the case of *Roberson* v. *Rochester Folding Box Co.*, 171 N. Y. 538, 64 N. E. 442, 89 Am. St. Rep. 828, 59 L. R. A. 478. It is interesting to note that subsequent to the decision in that case, the New York legislative assembly enacted a statute granting a right of action for the invasion of the right of privacy. In other jurisdictions it has been held that there was such a right of action under the common law; however, it appears that in many of the cases which purport to recognize the right of action for violation of the right of privacy, the real theory upon which the right is sustained is that there has been an invasion of a property right, or a breach of trust, or breach of contract. Thus, the tendency of many courts has been to confuse the recognition of a right of action based upon such theories, with the recognition of a right of action in tort for the interference with the right of privacy. For a general treatment of the subject, see 21 R. C. L. 1196 et seq.

In the instant case, we deem it unnecessary to determine whether there is a right of action in tort for the interference with plaintiff's right of privacy. We think the com-

plaint does state a cause of action upon the theory of an implied contract. In order to recognize such a right of action in this case, it is not necessary to rely in any manner upon the proposition that there has been an interference with plaintiff's right of privacy. In a note upon this subject appearing in 24 A. L. R. 1320, it is said: "The authorities are practically agreed that a photographer who is employed to make a negative and photographs for another, in the usual course of the former's business, has no right to use the negatives for his own purposes, the theory generally being that there is an implied contract that the photographer shall not use the plates, although some cases have asserted the additional grounds of violation of confidence, right of property, etc." In another note upon the subject in 50 L. R. A. 397, it is pointed out that the "right of privacy" is another of the additional grounds which has sometimes been asserted. (See, also, annotation in 7 L. R. A. (n. s.) 362 et seq.)

In the case of *Moore* v. *Rugg*, 44 Minn. 28, 46 N. W. 141, 20 Am. St. Rep. 539, 9 L. R. A. 58, we find the following pertinent language: "The object for which the defendant was employed and paid was to make and furnish the plaintiff with a certain number of photographs of herself. To do this a negative was taken upon glass, and from this negative the photographs ordered were printed. An almost unlimited number might also be printed from the negative, but the contract between plaintiff and defendant included, by implication, an agreement that the negative for which plaintiff sat should only be used for the printing of such portraits as she might order or authorize. (*Pollard* v. *Photographic Co.*, 40 Ch. Div. 345.) The complaint shows that there was a breach of this implied contract." There can be no doubt that this is a correct statement of the law. It is supported by the great weight of authority. (See *Lumiere* v. *Robertson-Cole Distributing Corp.*, (C. C. A.) 280 Fed. 550, 24 A. L. R. 1317; *Klug* v. *Sheriffs*, 129 Wis. 468, 109 N. W. 656, 116 Am. St. Rep. 967, 9 Ann. Cas. 1013, 7 L. R. A. (n. s.) 362; *Levyeau* v. *Clements*, 175 Mass. 376, 56 N. E. 735, 50 L. R. A. 397; *Douglas* v. *Stokes*, 149 Ky. 506, 149 S. W. 849, Ann. Cas. 1914B, 374, 42 L. R. A. (n. s.) 386; *Corliss* v. *Walker Co.*,

(C. C.) 64 Fed. 280, 31 L. R. A. 283. See, also, the following annotations and collection of authorities: 42 L. R. A. (n. s.) 386 et seq.; 7 L. R. A. (n. s.) 362 et seq.; 50 L. R. A. 397 et seq.; 24 A. L. R. 1320 et seq.)

In the present case, sufficient appears to constitute a cause of action for the breach of an implied contract, in accordance with the rule announced above. Indeed, there is an even clearer and more forceful cause of action upon the theory of breach of contract stated in this case than is to be found in most of the reported cases dealing with this question. It might be said that the complaint states a cause of action for the breach of an express contract. In addition to allegations showing the ordinary contractual relationship common to such transactions under the rule heretofore announced between photographer and patron, plaintiff alleged that she expressly admonished defendant at the time the picture was taken that she did not want her picture exhibited or displayed in his studio window or other public place. We are satisfied that the complaint does at least state a cause of action for the breach of an implied contract. It is therefore unnecessary to consider the matter any further. It is not necessary to determine whether the complaint might also state a cause of action upon some other theory, and we specifically refrain from so doing.

From the foregoing, it follows that defendant's demurrer to the complaint and objection to the introduction of testimony on the ground that the complaint failed to state a cause of action were properly overruled.

Defendant predicates error upon the admission of certain ██ ██ evidence. Defendant was a witness in his own behalf. In the course of cross-examination, as the fact appears from the narrated testimony, he made the following statement: "I did not previous to that wait in my car with another man until Miss Bennett left Hennessy's at noon and follow her slowly in my car over to the courthouse." He was then asked the following impeaching question: "Q. Did you not at some time last June in your car, with another man, whom we don't know—with George Merier, last June, wait in your car with Merier the man who just

preceded you on the stand, wait until Miss Bennett went west on Granite Street and follow her slowly in that car with Merier until she turned out to go through the courthouse grounds right out here?'' Counsel then intereposed an objection, as follows: ''That is objected to, if the Court please, as being incompetent, irrelevant and immaterial, certainly improper cross-examination, not tending to prove or disprove any issue in this case, and solely for the purpose of prejudicing this jury.'' The court overruled the objection and an exception was taken; whereupon the witness made the following answer: ''I have never seen her since that time. I did not with Merier, in my car, follow her last June.'' Thereafter plaintiff was called to the stand in rebuttal and was allowed to testify to the effect that defendant and another man had followed her in a car at the time and in the manner indicated. No specific objection was made to the rebuttal testimony at the time.

Defendant contends that because there was no allegation in the complaint that defendant interfered with plaintiff's rights by following her in a car, and that because nothing was brought out or touched upon in the direct examination of defendant which warranted such a question, the court committed error in permitting plaintiff to testify in support of the statement. His theory is that that character of evidence was highly prejudicial because it was not pertinent to the issues, and because it injected into the case a separate and distinct issue foreign to the issues of the case as made by the pleadings, and therefore was improper cross-examination. Plaintiff argues that the objection came too late, because defendant in the first instance had practically stated the facts of the matter before the specific impeaching question was asked and the objection interposed. We are unable to agree with this contention. As the matter was touched upon before the impeaching question was asked, it was not apparent that the subject would be made an issue and controverted; but when the matter was repeated and tendered specifically as an impeaching question, it at once became apparent that an attempt would be made to contradict the defendant in that particular, and so the objection was made. We

think that it was timely, and, if it was sufficiently meritorious otherwise, it should have been sustained. The contention that a motion to strike should have been interposed at this point is without merit, for the reason that the court had already ruled specifically that the testimony was admissible. Later, when the plaintiff was called to the stand to impeach the defendant, no objection was made to the testimony. The objection had already been lodged to that line of testimony, and, once properly made, the rules of practice did not require repetition to save the point. (*Ecclesine* v. *Great Northern R. Co.*, 58 Mont. 470, 194 Pac. 143; *Nelson* v. *Young*, 70 Mont. 112, 224 Pac. 237.) We are of the opinion that the objection, as made, saved the point and was sufficient for the record to make it available to defendant on appeal.

Plaintiff insists that the question was proper because defendant, on direct examination, had testified that he had never seen plaintiff after May 21, 1933, the date of the sittings, except two or three times in Hennessy's store. We fail to see the force of this contention. None of the testimony of this nature had any relevancy to the issues involved in the case. The main facts as to the taking of the photographs or the sittings therefor were practically uncontroverted. There was disagreement only as to some of the nonessential details. Defendant admitted that he had developed the photographs and that he had either displayed or authorized someone else to display them in public places without the specific consent of plaintiff. He denied, however, that plaintiff had ever at any time objected to the use which he made of the photographs. Plaintiff asserted that she made specific objection to the posting of the photographs in any manner at the time when the pictures were taken and as a part of the original agreement. She does not claim that she ever communicated with the defendant subsequent to that time. In view of the circumstances of the case and of the type of action, it was immaterial whether the defendant ever saw plaintiff after the time when the pictures were taken. Evidence tending to prove or disprove such a fact really tendered an issue foreign to the case. It was certainly irrelevant, incompetent and im-

material. (See 2 Jones' Commentaries on Evidence, 1083 et seq.)

The court's refusal to sustain the objection was undoubtedly error. The only question remaining is, Was such error of sufficient gravity to necessitate a reversal? As we have suggested, such testimony tended to charge defendant with a separate and distinct wrong and had no bearing on the issues involved in this case. It is fundamental in criminal cases that a person charged with a certain crime cannot be convicted by the introduction of evidence of other crimes committed by him, although evidence of such other crimes may be admissible to show system, intent, etc. (*State* v. *Simanton,* 100 Mont. 292, 49 Pac. (2d) 981.) The reason for the rule is manifest. It is equally true that in a case of this kind the cause of action asserted and relied upon cannot be proved by evidence of some other and different offense. There is even less justification for the injection of extrinsic matter here than exists in the ordinary criminal case, where evidence of a similar offense is admitted to establish system or intent.

The admission of the testimony must be considered in this case in connection with another assignment of error, to-wit, that the damages allowed were excessive and were given under the influence of passion and prejudice, and that the size of the verdict and judgment is shocking to the conscience. A careful study of the facts leads to the opinion that the amount of damages awarded was substantial, to say the least. However, if the record disclosed no error otherwise sufficiently prejudicial to impeach the result, we would be reluctant to order a new trial on that ground alone. One can but be impressed with the fact that the testimony of plaintiff wherein she detailed the incident of having been followed by defendant could have but one possible effect on the minds of the jury. In cases of this kind, it is always impossible to say definitely that evidence erroneously admitted actually did or did not influence the jury and tend to arouse passion and prejudice which could only be manifested by penalizing the defendant in the only manner left open to the jury—that was by increasing the amount of the award.

Therefore, taking into consideration the fact that the testimony was really inadmissible, the size of the verdict, and all of the circumstances of the case, we are of the opinion that the admission of the testimony really constituted prejudicial error.

Several other specifications of error were urged, but in our opinion they do not involve questions likely to recur at another trial, and are therefore not discussed herein.

For the reasons herein stated, the judgment is reversed and the cause remanded, and the trial court is directed to grant a new trial.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in the foregoing decision.

Rehearing denied January 8, 1936.