RALPH, Respondent, v. MacMARR STORES et al., Appellants.

(No. 7,592.)

(Submitted November 6, 1936. Decided December 5, 1936.)

[62 Pac. (2d) 1285.]

422

*Messrs. Kremer & Kremer* and *Mr. H. D. Carmichael,* for Appellants, submitted a brief; *Mr. Alf. C. Kremer* argued the cause orally.

424

*Mr. H. L. Maury* and *Mr. A. G. Shone,* for Respondent, submitted a brief; *Mr. Maury* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an action for damages for personal injuries suffered by Margaret Ralph in falling over a box on the floor of a

grocery store owned and operated by defendants, MacMarr Stores, a corporation, and Gerald R. Stafford, manager thereof, in the city of Butte.

The store was one of the type commonly designated "self-service." The tables, counters and floor displays were so arranged as to form aisles for the use of customers, who might themselves proceed to any part of the store for the purpose of selecting merchandise displayed therein. Just inside the main entrance there was a rack of shopping baskets for the use of customers. A customer, upon entering the store, could take one of the baskets and proceed around the store selecting the items desired for purchase. As selections were made the merchandise was placed in a basket, and when everything desired was selected, the basket was taken to a wrapping or checking counter near the center of the store, and everything taken from the basket, checked and wrapped by an employee of the store.

On February 15, 1935, shortly after 5 o'clock in the afternoon plaintiff with a friend, one Margaret McLeod, entered this store for the purpose of purchasing groceries. Each took a shopping basket and proceeded to different parts of the store to select the items desired; there is some conflict as to just where each of them went in the store. However, it appears that Mrs. McLeod was the first to assemble her selections. She thereupon carried her basket and its contents to the wrapping and checking counter. At about the same time plaintiff, having selected all of the grocery items she desired, walked toward the front of the store where the vegetables were kept for the purpose of selecting a head of lettuce. There is some conflict in the evidence as to whether she carried the shopping basket with her at this time, or had left it on the wrapping counter. She testified that when she fell, she had the basket and her purse in her hands. In any event, after choosing the head of lettuce she turned from the vegetable rack and started to walk back down the aisle toward the wrapping and checking counter. She had gone only a few

steps when she stumbled over a box and fell to the floor. While there is some conflict in the evidence on the point, it is fairly clear that the box over which she stumbled was sitting against a display counter and protruding somewhat out into the aisle along which she was walking. The box contained twelve quart jars of Miracle Whip salad dressing. It was a pasteboard box 16½ inches long, 12½ inches wide, and 7½ inches high. It was sealed and unopened and had apparently been recently delivered to the store by the Montana Service Corporation.

The defendant Stafford, the manager of the store, was not in the store at that time; he had gone off shift at 5 o'clock. There were three clerks on duty—Harold Heinicke, Howard Casey and Lindley Barry. Heinicke was head clerk, in charge while Stafford was absent. Barry testified that he had passed down the aisle and had seen the box sitting against the display counter about five minutes before the accident. The other two clerks said that they never saw the box at all until afterwards.

There was some conflicting testimony as to the number of boxes; however, plaintiff testified that there was only the one over which she tripped. None of the three clerks knew who had placed the box at that place; none of them had seen the Montana Service Corporation deliveryman bring such a box into the store; and none of them had signed the delivery receipt for the box or the merchandise which it contained. There is no direct evidence as to who actually received this merchandise and signed the receipt for it.

A delivery receipt was finally obtained from the Montana Service Corporation and introduced in evidence. It showed that a box containing one dozen quart jars of Miracle Whip had been delivered to the store on that day, and that the delivery receipt had been signed with the initials "G. S." It was also shown that such merchandise, when received at the store, might have been received and receipted for by any of the clerks or the manager; that such goods were

428

always "signed for" when delivered; and that the delivery-man for the Montana Service Corporation would not leave merchandise unless "signed for." When merchandise was thus received in the store and "signed for," one copy of the invoice was kept by the store and one copy was retained by the truck driver who delivered the goods.

While there was conflict in the evidence as to the width of the aisle through which plaintiff was walking when she fell, it appears to have been approximately five feet wide. Plaintiff testified that she did not see the box and did not know of its presence or that it protruded out into the aisle, until she had fallen over it. It appears that the store was quite well lighted at the time; that it was still daylight out-side; that there were also at least four strong electric ceiling lights burning; and that one of these lights was situated immediately over the aisle in which plaintiff fell. It further appears that at the time of the accident there were some fifteen or twenty people in the store, and that it was one of the busiest hours of the day.

Evidence was introduced to show that plaintiff had pre-viously on many occasions visited this particular store, as well as other stores of the same type, and that it was customary for such stores to display potatoes, apples, boxes of oranges or onions, etc., all around on the floors, setting them on the floor alongside the display counters.

While the record discloses a great deal more evidence similar in nature to that outlined above, a more extended recitation thereof is unnecessary for the purposes of this opinion. The cause was tried to the court sitting with a jury. Defendants' motions for nonsuit were denied, and the matter was finally submitted to the jury with instructions from the court. The jury returned a verdict in favor of plaintiff for $12,000; judgment was entered thereon; motion for new trial was made and denied, and thereafter appeal perfected.

Defendants' specifications of error present several questions for determination. The first proposition concerns the

court's refusal to grant defendants' motions for nonsuit. They assert that plaintiff's action was predicated upon the theory of an overt act of negligence on the part of defendants, viz., the placing of the box on the floor, and allowing it to remain there without proper warning. They point out that the complaint contains no direct or specific allegation that defendants had notice of the condition, and that there was no proof that defendants placed a box in the position referred to, or that they maintained it in such a place. Accordingly they argue that plaintiff is in the position of one who charges another with negligence because of a failure to remedy a defect not of his own making; that if in such circumstances plaintiff is to prevail, the complaint should allege, and the evidence establish, that defendants had knowledge of the dangerous condition, or that such a condition existed for such a length of time, without being remedied, as to charge them as a matter of law with knowledge thereof. The contention thus advanced constituted one of the principal grounds urged by defendants in support of their motions for nonsuit.

Considered as an abstract principle of law, this contention is undoubtedly correct. (See *McEnaney* v. *City of Butte*, 43 Mont. 526, 117 Pac. 893; *Phillips* v. *Butte etc. Fair Assn.*, 46 Mont. 338, 127 Pac. 1011, 42 L. R. A. (n. s.) 1076; *Doran* v. *United States Building & Loan Assn.*, 94 Mont. 73, 20 Pac. (2d) 835.) It is not applicable, however, to the instant case. It may be true, as defendants suggest, that there is no evidence that they were actively negligent, i. e., that they placed the box on the floor where plaintiff fell over it; but there was evidence from which the jury might find that, although someone else may have placed the box in the store at the point where plaintiff fell over it, still defendants had notice, or should have had notice, of the condition thereby created, and that they were negligent in permitting it to exist. We also find that the allegations of the complaint were broad enough to satisfy the requirement that where, in such cases, the negligence charged is not of an active nature, notice to

defendant must be alleged and proved. The complaint here contains the allegation: "That on or about the said fifteenth day of February, 1935, the defendants placed a box, filled with goods, about twelve inches long, ten inches wide, and ten inches high, upon the floor and in the aisle of their said store, and negligently permitted the same to remain on the floor and in the aisle," etc. In the case of *Hollingsworth* v. *Davis-Daly Estates Copper Co.*, 38 Mont. 143, 99 Pac. 142, 145, this court, in discussing the same question, said: "Knowledge by the defendant is generally regarded as sufficiently averred by an allegation that the defendant negligently permitted appliances to become defective, and negligently suffered them to remain in a defective condition (6 Thompson on Negligence, sec. 7529, and cases cited), and we adopt this as a reasonable, logical, and good rule of pleading in this state." (See, also, *Robinson* v. *F. W. Woolworth Co.*, 80 Mont. 431, 261 Pac. 253.) Under the foregoing rule it is clear that the complaint herein contains a sufficient averment of notice to or knowledge by the defendants, in the allegation that defendants "negligently permitted the same to remain on the floor and in the aisle." As we have already observed there was sufficient evidence of negligence in this particular to justify submission of the matter to the jury. It follows, therefore, that the court did not err in overruling defendants' motions for nonsuit.

The next question raised has to do with the admission, over defendants' objection, of a mortality table to show the expectancy of plaintiff's life. In admitting it the court said: "This is a matter that is generally taken up in connection with instructions." The court also stated that "the proffered table is admitted in evidence, subject to instructions to be given to the jury at the close of the trial. Gentlemen of the jury, the expectancy of life of a female of the age of 34 years is 32.42 years." Defendants now complain that no instructions regarding this matter were later given to the jury. They contend that the court, after

admitting the table in evidence, should have instructed the jury as to the applicability of the annuity tables; and that where, as in this case, the evidence is conflicting as to whether the plaintiff's injuries are permanent the court should have instructed the jury that such tables were not to be used unless the injuries were found to be permanent, citing *Cornell* v. *Great Northern Ry. Co.*, 57 Mont. 177, 187 Pac. 902, and *Robinson* v. *Helena Light & Ry. Co.*, 38 Mont. 222, 99 Pac. 837. Thus defendants contend that the admission of the mortality tables in evidence was error in view of the fact that the necessary qualifying instructions with reference thereto were not subsequently given.

Under the authority of the case of *Stephens* v. *Elliott*, 36 Mont. 92, 92 Pac. 45, the mortality table in question was properly admitted in evidence. It may be true, as defendants contend, that the instructions should have been given qualifying the extent of consideration to be given to that table. However, this court has held that a district court may not be put in error for failure to instruct the jury on a given point on its own motion; that if appellant desired an instruction on a subject not covered by the instructions given (such as limiting the effect of evidence admitted over objection to a certain purpose), it was his duty to tender it. (*State* v. *Miller*, 97 Mont. 434, 34 Pac. (2d) 979; *Bourke* v. *Butte etc. Power Co.*, 33 Mont. 267, 83 Pac. 470.) It was defendants' duty to offer the instructions which they claim should have been given. Having neglected to do so, they cannot now put the court in error for failure to give such instructions.

Defendants predicate error upon the court's refusal to permit the introduction in evidence of a certain X-ray photograph. It was claimed to be a photograph of a normal pelvic cavity. Defendants proposed to have it introduced in evidence for the purpose of comparing it with X-ray photographs of plaintiff's pelvic cavity. It is unnecessary to decide whether the photograph might, under proper circumstances, have been properly admissible in evidence for purposes of comparison as

proposed by defendants. Here the record discloses that Dr. Kane, witness for defendants, who identified the X-ray photograph as one taken by him, did not know or remember the person of whom the X-ray photograph was taken; he did not know whether it was of a man or a woman. In such circumstances it cannot be said that the court erred in refusing to admit the X-ray photograph in evidence to be compared with those taken of plaintiff.

Defendants contend that the evidence is insufficient to sustain the verdict and judgment, and that the verdict is against the law. They suggest that under the evidence disclosed by the record, plaintiff was, as a matter of law, barred from recovery because of her own carelessness in failing to see the box over which she fell, and that she could have seen it if she had been looking. Thus they assert that plaintiff's own case raised a presumption of contributory negligence, that it therefore devolved upon her to refute such presumption, and that she failed to satisfy that requirement. In support of their position they cite and rely upon the rule adopted in the case of *Autio* v. *Miller*, 92 Mont. 150, 11 Pac. (2d) 1039, 1043, to the effect that ''a person is presumed to see that which he could see by looking. * * * He will not be permitted to say that he did not see what he must have seen, had he looked.'' (See, also, *Boepple* v. *Mohalt*, 101 Mont. 417, 54 Pac. (2d) 857.) A reading of the cases wherein this rule has been followed discloses that in most instances its application was restricted to the drivers of automobiles, or to pedestrians on the streets or sidewalks. Thus in the case of *Robinson* v. *F. W. Woolworth Co.*, supra, it was said: ''Counsel say there is no evidence that plaintiff was using due care for her safety. A customer in a store is not bound to use the same degree of care to avoid obstacles to safety as is a pedestrian on a sidewalk; he is entitled to assume the premises are reasonably safe; and the question of plaintiff's due care was one for the jury.'' (See, also, annotation in 58 A. L. R. 138.)

The question of contributory negligence in cases such as this one is quite generally held to be one for determination by the jury. In addition to the authorities already cited, see *Montague* v. *Hanson*, 38 Mont. 376, 99 Pac. 1063; *Ransom* v. *Kreeger Store*, (La. App.) 158 So. 600; *Sears, Roebuck & Co.* v. *Peterson*, (C. C. A.) 76 Fed. (2d) 243; *Kappertz* v. *The Jerseyman*, 98 N. J. L. 836, 121 Atl. 718; *Finnegan* v. *Goerke Co.*, 106 N. J. L. 59, 147 Atl. 442; Id., 157 Atl. 155, 9 N. J. Misc. 1082; annotations in 33 A. L. R. 181 et seq., 58 A. L. R. 136 et seq.

As we have already indicated, there was sufficient evidence to go to the jury upon the question of defendants' negligence. We are likewise of the opinion that the question of contributory negligence was, under the facts and evidence disclosed by the record, a proper question for determination by the jury

Defendants predicate error upon the court's refusal to give ▮ certain instructions to the jury. In view of the conclusion reached in this case, we deem it unnecessary to make any extended discussion of the questions thus raised. In most instances we find that the proposed instructions contain a correct statement of the law applicable to the case. However, the principles enunciated therein were specifically, or in effect, substantially covered in other instructions which were given by the court. In such circumstances defendants cannot be said to have suffered any prejudice by reason of the court's refusal to give the particular instructions in question. (*Simons* v. *Jennings*, 100 Mont. 55, 46 Pac. (2d) 704.)

There remain but two other specifications of error which we ▮ deem of sufficient importance to warrant special consideration. The first one is to the effect that the verdict was excessive and was given under the influence of passion or prejudice, and the second one has to do with a controversy which arose between counsel during the course of the trial and which resulted in accusations by one of plaintiff's counsel against defendants' counsel, whereby counsel for the defendants was accused of withholding and suppressing evidence.

The question of excessive verdicts alleged to have been returned under the influence of passion and prejudice was treated by this court at some length in the recent case of *McCartun* v. *Park Butte Theater Co.*, ante, p. 342, 62 Pac. (2d) 338. It is not necessary to reiterate what was so recently declared in that opinion. There it was held that in the circumstances of that case we could not say that the verdict had been so actuated. The authorities were collected and cited and the law discussed with relation to the point. In that case the size of the verdict was not such, standing alone, as to sustain the charge that it had been induced by passion and prejudice. We could say the same here, although the verdict does seem to be more than ordinarily substantial, were it not for the fact that we find ourselves confronted by somewhat the same situation that obtained in the case of *Bennett* v. *Gusdorf*, 101 Mont. 39, 53 Pac. (2d) 91. There we discussed the admissibility of testimony and stated that the matter should properly be considered in connection with the assignment relating to the alleged misconduct which occurred at the trial.

The matter of misconduct of counsel and the prejudice resulting therefrom has been discussed by this court in several recent cases. In the case of *Vonault* v. *O'Rourke*, 97 Mont. 92, 33 Pac. (2d) 535, it was held that the injection into the case by plaintiff's counsel of the matter of insurance carried by the defendant constituted reversible error. In the case of *State* v. *Shannon*, 95 Mont. 280, 26 Pac. (2d) 360, it was held that certain questions asked by the county attorney constituted prejudicial error. In the more recent case of *State* v. *Patton*, 102 Mont. 51, 55 Pac. (2d) 1290, 104 A. L. R. 76, it was held that improper questions persistently asked by counsel constituted prejudicial and reversible error. In all of these cases this court sought to point out the reasons underlying the general proposition and to apply general rules to specific circumstances. Here the trouble arose with relation to the invoice connected with the delivery of the merchandise contained in the box over which plaintiff stumbled.

The record discloses that apparently the Montana Service Corporation in delivering merchandise to customers used duplicate or triplicate copies of such bills or invoices. Opon one copy thereof it was customary for the receiving merchant to indorse the receipt of the goods. The copy left with the defendant store was apparently in the possession of one of counsel for defendants. In the course of the trial counsel for the defendants admitted that he had such a copy in his possession, and upon request of counsel for plaintiff said that he would bring it into court. Later, however, he asserted that his copy was not an original, that the original was available to plaintiff in the possession of the Montana Service Corporation, and that counsel could secure it for introduction in evidence, and he then refused to bring his copy into court. Briefly, the controversy seemed to rage around the question of who should produce the invoice. Counsel for plaintiff apparently desired to have the copy in the possession of defendants' counsel brought into court in order to show the indorsement of the receipt of the goods, by whom received, and the time of the receipt therefor. He demanded that opposing counsel bring his copy of the invoice into court. The court refused the request and read section 10586, Revised Codes, to the jury. That section reads: "If the writing be in the custody of the adverse party, he must first have reasonable notice to produce it. If he then fail to do so, the contents of the writing may be proved as in case of its loss."

Apparently all copies were finally brought into court, but that did not satisfy the participants. Quite a spirited and acrimonious controversy took place between counsel and was continued from time to time. A part of this controversy occurred without the presence of the jury, but a considerable part of it either actually occurred before the jury or was brought to the attention of the jury by remarks of counsel in the course of the trial and later in the argument to the jury.

A serious feature of the controversy involved a statement made by counsel for the plaintiff in the presence of the jury

in connection with the attempt to force opposing counsel to bring his copy of the invoice into court. That statement was as follows: "If I can prevent it you are not going to hide this lady's case from this court and jury." The court did not then nor thereafter warn the jury to disregard the matter or instruct it that no weight should be given to it. The record discloses that thereafter at intervals through the trial the matter was adverted to by counsel for plaintiff and remarks were made tending to charge counsel for the defendants with the suppression of evidence. When the evidence had been closed and the case was argued to the jury, counsel for plaintiff apparently referred to the matter again two or three times in the course of his argument. The record does not show exactly what was then said, but it does show the objection made by counsel and discloses that there were again spirited arguments with relation to the matter, and still the court did not caution the jury to disregard such statements.

It is not necessary to discuss the matter at great length. The supreme court of Oklahoma, in the case of *Green Construction Co.* v. *Lampe,* 174 Okl. 351, 50 Pac. (2d) 286, 287, held that language substantially similar to that under consideration here constituted prejudicial error. The language of counsel in that instance was as follows: "Wait a minute, the court please, this ought not be a game at concealing the facts." (See, also, *Mangino* v. *Bonslett,* 109 Cal. App. 205, 292 Pac. 1006; *Keena* v. *United Railways of San Francisco,* 197 Cal. 148, 239 Pac. 1061; annotations to the case of *Texas Indemnity Ins. Co.* v. *McCurry,* (Tex. Com. App.) 41 S. W. (2d) 215, 78 A. L. R. 760; *State* v. *Lindsey,* 185 Wash. 206, 52 Pac. (2d) 1246.)

In the very recent case of *State* v. *Navone,* (Wash.) 58 Pac. (2d) 1208, 1211, the supreme court of Washington used the following very pertinent language in connection with a similar matter: "Misconduct is to be judged not so much by what was said or done as by the effect which is likely to flow therefrom. What would be misconduct in one case might very well be held not to be misconduct in another. Each situation in-

volving the question of misconduct must stand by itself and must be considered in the light of all of its facts and circumstances to the end that verdicts properly arrived at shall not be disturbed and that those verdicts which may have been induced by prejudice or by something beyond the issues shall not be allowed to stand. It is useless therefore to cite cases in which this question has been discussed or to compare the situation here presented with other situations shown in our reports, save that, as illustrative, the recent case of *State* v. *Lindsey*, [185 Wash. 206] 52 Pac. (2d) 1246, may be considered."

A careful reading and study of the record in this case leads us to the same conclusion that we announced in the case of *Bennett* v. *Gusdorf*, supra, wherein we called attention to the fact that it is almost impossible to say definitely just what did or did not influence the jury, and just what could or did tend to arouse passion and prejudice, if such existed.

Litigants are entitled to have their cases tried and considered upon the issues involved, upon the facts admitted in evidence. There can be no doubt but what the copy of the invoice in the possession of the defendants' counsel was properly admissible in evidence, particularly the so-called "criptic" signs or indorsements found thereon. The object in requiring that particular copy was apparently to obtain the effect of the indorsements as to delivery of the goods, time of reception thereof, and identity of the party receipting therefor. It is entirely possible and probable that counsel for defendants was mistaken as to the legal rights of himself and his client; nevertheless there was an orderly and proper method available to plaintiff under the statute to require the production of the writing. The circumstances did not justify the assumption and the charge that evidence was being wrongfully suppressed and hidden from the court and jury.

Upon the two assignments of error, considered together, it is apparent that much prejudicial matter was called to the attention of the jury. Of course, no one can say how much, if any, effect this matter did have upon the minds of the jury

when considering their verdict. We are convinced that enough prejudicial matter found its way to the jury to justify the belief that the result may have been affected thereby. The cause should be tried in an orderly and legal manner and in accordance with recognized rules of court procedure. In order that that end may be achieved a new trial will be necessary.

The judgment is reversed, with instruction to grant a new trial.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent, did not hear the argument and takes no part in the foregoing decision.