STEVENS, RESPONDENT, *v.* CITY OF BUTTE, APPELLANT.

(No. 7,826.)

(Submitted November 15, 1938. Decided December 17, 1938.)

[85 Pac. (2d) 339.]

356

*Mr. F. C. Fluent,* for Appellant, submitted a brief, and argued the cause orally.

358

*Mr. H. L. Maury* and *Mr. A. G. Shone,* for Respondent, submitted a brief; *Mr. Shone* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

Margaret Stevens, as plaintiff, secured a judgment for $1,600 against the city of Butte, as defendant, on account of personal injuries suffered by her.

The complaint alleged that the servants and employees of the city were engaged with a large hose in washing and cleaning out a sewer; that plaintiff was a pedestrian on the sidewalk waiting for a street car; that she crossed the street, using all care, in order to board the car, and that while exercising care on her part the servants of the city negligently permitted the hose which they were using and which had a great pressure of water inside thereof, to escape and get out of control; that the hose or the nozzle thereof—plaintiff being ignorant as to which it was—violently swerved and moved up in the air and struck plaintiff on the small of the back and on the right hand, and knocked her down into the street; that, as she attempted to arise, the hose or nozzle struck her a second time and a third time—each time knocking her down; that plaintiff was caused grievous injuries to her back, muscles of her back in the lumbar region thereof and that she was bruised and strained; that her right hand was lacerated and torn; that the muscles of her abdomen were bruised and strained, and that plaintiff, being a married woman and pregnant, was caused to suffer a miscarriage and was caused to spend two weeks in bed under the care of physicians and surgeons, and that thereafter she was able to be up and around, but subsequently was confined to her bed, and finally that she suffered permanent injuries, which injuries caused her great shock, nervous fright and pain, and suffering of mind and body. The demand for damages included fees of doctors and surgeons estimated at $100.

The defendant filed what was treated as a general and special demurrer. The special part of the demurrer asserted that it could not be ascertained from the complaint how or in what manner the employees of the city were negligent in permitting the hose to escape and get out of control and inflict the injuries. In due course the demurrer was overruled. Defendant answered with appropriate denials and set up contributory negligence on the part of plaintiff. In addition thereto defendant pleaded an ordinance of the city which required pedestrians crossing a roadway to travel on a marked cross walk or intersection, except in certain cases.

The cause proceeded to trial and the jury returned a verdict in favor of plaintiff for $1,600. Judgment was entered accordingly, and defendant has appealed from the judgment. The specifications of error are several but really involve the sufficiency of the complaint, the sufficiency of the evidence and the refusal of certain offered instructions.

The demurrer challenged the sufficiency of the complaint on the ground that the pleading did not set forth the particular facts or specific acts upon which plaintiff relied for recovery. The pertinent allegation of the complaint was that defendant negligently permitted the hose in use to escape and get out of control and inflict the injuries.

On the asserted insufficiency of the complaint, defendant relies upon the case of *Pullen* v. *City of Butte,* 38 Mont. 194, 99 Pac. 290, 21 L. R. A. (n. s.) 42. In that case the court held a complaint insufficient, but the negligence which was the subject of the complaint was of a different character from that alleged here.

We are of the opinion that the defendant waived the effect of the special demurrer by answering over. (See *Pue* v. *Wheeler,* 78 Mont. 516, 255 Pac. 1043; *Robinson* v. *F. W. Woolworth Co.,* 80 Mont. 431, 261 Pac. 253; *Linney* v. *Chicago etc. R. Co.,* 94 Mont. 229, 21 Pac. (2d) 1101.) Defendant attempted to preserve its position as to the insufficiency of the complaint by raising the question by objection and motion at every appropriate opportunity throughout the trial of the cause.

In the case of *Johnson* v. *Herring,* 89 Mont. 156, 295 Pac. 1100, this court discussed the manner of pleading such a cause of action as that involved here, and there repeated the rule that: "Negligence may be charged in general terms; that is, what was done being stated, it is sufficient to say that it was negligently done, without stating the particular omission which renders the act negligent." (See, also, *Robinson* v. *F. W. Woolworth Co.,* supra.)

If plaintiff had attempted to plead specific acts of negligence, she would have waived the benefits of the doctrine of *res ipsa loquitur,* and then, if she had been unable to establish the cause

or causes as alleged, she would have failed in her attempt to recover.

The applicable rules were set out and discussed in the case of *Johnson* v. *Herring*, supra, and also in the more recent case of *Vonault* v. *O'Rourke*, 97 Mont. 92, 33 Pac. (2d) 535. The demurrer in both its general and special aspects was properly overruled. The complaint was sufficient.

The evidence was not voluminous nor very much in conflict. It appears that on the afternoon in question plaintiff and her sister were desirous of boarding a street car on Main Street. When they got to the intersection of Platinum and Main Streets, near the point where they wished to take the car, they observed two city employees flushing a sewer by means of a hose, one end of which was attached to a hydrant of the city water works system, and the other end inserted down into the sewer. The process was described by one of the city employees who participated in the operation. He said that they first lifted the grate from the manhole, put the hose down in the hole and then put the grate on top thereof, and that, as an extra precaution, he sat or stood upon the grate. The hole was about $4\frac{1}{2}$ feet deep, and the hose extended to the bottom thereof. He also said that after the hose was down to the bottom he stood on the grate while his partner turned the water on. He did not assume to explain just how the hose came to escape from the hole. He said, ''I stood there at least five minutes and then is when it came out of the hole. When I say I stood there, I was standing on top of the grate and the grate was on top of the hose. Then the hose worked its way up and it came out of the hole knocking me down and tipping me off the grate and tipping the grate over.''

The evidence is clear that plaintiff and her sister proceeded toward the point at the street crossing where the street car ordinarily stopped; that as they progressed in that direction they observed the hose across the street; that in order to prevent stepping over the hose they crossed diagonally and went out into the street; that they went to the center of the street on the cross walk where the car usually stopped, and had stood there per-

haps 15 seconds with their backs toward the flushing operations; that they had no warning or intimation that they were in a dangerous place, and the first they knew of the danger was when the hose struck them. Apparently it came out of the hole with considerable force and weaved or "snaked" about in a dangerous way.

Plaintiff was struck in the back and knocked down; she was not sure whether she was struck by the hose or by the water. She attempted to arise and was again knocked down. She testified that the first time she was struck she thought it was the grate off the sewer that hit her. She tried to rise at least once and she thought twice, but each time was struck and knocked to the pavement. Other witnesses testified to some or all of the facts.

It is very clear that the hose came out of the hole without warning, and that plaintiff was struck without even knowing what it was that hit her. The defendant was not able to clear the matter up, but its witnesses merely described the fact that the hose, by reason of the force and action of water within it, worked its way out from under the grate, knocked the man aside and struck the two women. As soon as possible the city employees turned the water off and assisted the women as best they could.

The facts as detailed by all of the witnesses led to but one conclusion, and that was that the hose was not sufficiently secured in the hole to insure against accident. Plaintiff had no knowledge of the process involved; she knew nothing about what was being done and had no control over or responsibility for the operations of the city or the acts of its employees.

Consideration of the facts makes it obvious that the type of pleading adopted in the complaint was the only one available in the assertion of plaintiff's cause of action. She could not allege facts of which she had no knowledge. An attempt to do so would have been mere guesswork on her part, and would have unduly restricted her in the establishment of her cause of action. The fact is that resort to such an attempt would have probably resulted in the absolute failure of her case.

It is also obvious that an attempt to account for and prove just how and why the hose got out of control would have left her in the same predicament. It cannot be said that it was impossible to so confine the hose as to have kept it within the hole and prevent injury to those adjacent thereto; neither can it be said that the occurrence was an unavoidable accident. We can only say as we said in the case of *Tanner* v. *Smith,* 97 Mont. 229, 33 Pac. (2d) 547, 550: "It happened through the fault of some one." Certainly, it was not through any fault of plaintiff. The explanations of the city employees did not clear the matter up very much more than the evidence of plaintiff and her witnesses. The fact simply remains that the city employees placed the hose in the hole, took what they thought were reasonable and necessary precautions to retain it there and then turned on a head of water from the main. The hose escaped by reason of the pressure of the water.

Witnesses for defendant testified that the operation was a usual one, and that they had frequently flushed sewers in that manner. However, there was nothing in the testimony to indicate that the water pressure at the point was ordinary or to refute a very natural presumption that the pressure must have been stronger that day or at that point than usual. One of these contingencies, or either of them, may have occurred as the immediate cause of the accident; but in any event none of these things were attributable to plaintiff or even within her knowledge.

As the matter stood, the city owed a duty to perform the operation so as to prevent injury to plaintiff. This end was not achieved. The evidence adduced by the plaintiff was sufficient to make out a prima facie case. All plaintiff had to do was to show that the injury was more naturally to be attributed to the negligence of the city than to any other cause. The rule of absolute exclusion of other causes was not applicable. (*Freeman* v. *Chicago etc. Ry. Co.,* 52 Mont. 1, 154 Pac. 912.)

There was no showing that plaintiff was in anywise guilty of contributory negligence. She took the precaution to walk around the hose as she proceeded to the stopping place of the

street car, rather than to step over it. It is true that she did walk off the sidewalk to do that, but she was to be commended for that precaution rather than penalized. She said "because the hose was extended across the sidewalk and it was wet there and men were working and I thought it was unsafe to go down that way" she took the crossing indicated.

In making a choice between two courses to pursue, one is not required to make the correct choice in the light of after-events, but only such choice as a reasonably prudent person might make under the known or obvious circumstances. (*Mullery* v. *Great Northern Ry. Co.,* 50 Mont. 408, 148 Pac. 323; *Daniels* v. *Granite Bi-Metallic Consol. Min. Co.,* 56 Mont. 284, 184 Pac. 836; *Ernst* v. *City of Helena,* 104 Mont. 249, 65 Pac. (2d) 1167; *Koppang* v. *Sevier,* 106 Mont. 79, 75 Pac. (2d) 790; *Tiddy* v. *City of Butte,* 104 Mont. 202, 65 Pac. (2d) 605.)

There is nothing in the record to indicate that plaintiff did not choose the right course. The fact is that in either instance she would have reached the same point, which was the place where she was struck, and which was an appropriate and proper place for her to stand while waiting for the street car. It is also obvious that if she had continued along the sidewalk and had stepped over the hose, her peril might have been greater than otherwise.

We can see nothing in the record to justify the claim of contributory negligence on the part of plaintiff. To invoke that principle it was necessary to assume that plaintiff had done some affirmative act or negligently refrained from doing some necessary act or duty in the premises. In the light of the circumstances she neither did an act that she should have refrained from doing, nor negligently refused to do an act that it was her duty to do.

The city pleaded and attempted to prove the existence of an ordinance which required that "pedestrians crossing a roadway shall cross at a marked crosswalk or intersection," etc. The court refused to admit the ordinance in evidence and refused to give an instruction on the question. We think that both rulings were correct. We cannot see wherein it made any

difference how plaintiff arrived at the point where she was struck. According to the evidence she was standing at that point for at least fifteen seconds before the accident occurred. While she may have been previously guilty of a technical violation of the ordinance, that would not have exculpated the city in the premises. The fact was that she was at a proper point where she had a legal right to be when she was struck. There was no error in denying the admission of the city ordinance or refusing to instruct thereon.

The other offered instructions which were refused by the court and which refusals were urged as errors go to the question of unavoidable accident. As we have indicated, that theory was not tenable in the light of the evidence in this case.

One of the assignments of error involves the contention of defendant that the verdict was excessive and was given under the influence of passion or prejudice, which was raised on motion for new trial. The verdict was for $1,600, which included the doctors' bills estimated at about $100. Plaintiff described her injuries as follows: ''My back was hurt, my hand was cut, my fingers, my ankle, and I was in bed with my back bothering me for two weeks, and the doctor allowed me to get up around the house, and I was taken ill again on the 8th of August and had to go to my aunt's and stay there for ten days. After I went to my aunt's I had a miscarriage. The pain that I went through was intense and I really don't know much about it because I was sort of unconscious for an hour or two. I have trouble now doing my housework, and I can't do much washing or ironing or anything like that. It makes my back ache and I get tired working and my back bothers me terrible. I have not gotten completely over this yet as my back still bothers me. I have trouble in trying to scrub the floors or in anything where I have to do much leaning or stooping.''

The evidence was given at the trial on the 8th or 9th of December, 1937. The accident occurred on the 21st of the previous July. Dr. Shields, who attended plaintiff after the accident, testified in her behalf. He described her injuries and said that when he first reached her shortly after the accident,

she had a contusion and an abrasion of the right arm, the right wrist and right hand and ring fingers of both hands; that there was a left ankle sprain and a contusion of the lumbar region; that he strapped plaintiff's back, made X-ray pictures to ascertain the extent of her injuries; that she was in bed several days at home and later went to her aunt's. Plaintiff described all of this herself. She said she remained in bed about two weeks at home and then went to her aunt's where she was in bed for a further period of several days. Dr. Shields gave it as his opinion that she did have a miscarriage, although he was not present at the time of the occurrence and did not see the fetus. He said, "But the symptoms and the clots that were passed when I got there would lead me to believe she had a miscarriage." Plaintiff's aunt testified with relation to the alleged miscarriage and asserted that plaintiff did suffer the miscarriage.

Apparently plaintiff was largely recovered from her injuries at the time of the trial, although she claimed to still have pain and that she suffered continuing disabilities. All of this evidence was addressed to the discretion of the jury, and it is within its prerogative to consider and decide the case. This court has frequently discussed similar assignments of error and in some instances has pointed out wherein the evidence was not sufficient to support the verdict of the magnitude rendered.

In the case of *Ashley* v. *Safeway Stores, Inc.*, 100 Mont. 312, 47 Pac. (2d) 53, the court made the following observations: "It is a well-established rule of this court, and of courts generally, that the amount of damages to be paid for personal injury is peculiarly within the province of juries, and that such findings are final and conclusive unless the results are such as to shock the conscience and understanding of a court. It is always difficult to decide just when and under what circumstances that kind of condition exists. We do not deem it our prerogative to substitute our judgment for the judgment of a jury in the ascertainment of damages where the finding is based upon conflicting evidence. The rule in such a situation is no different from that obtaining in all controverted fact issues properly submitted to juries. It is not a question of the amount this court

would have awarded under the circumstances. It is not the amount which in our opinion would compensate the injured party; rather it is a question of what amount of damages will the record in the case support when viewed, as it must be, in the light most favorable to the plaintiff. It is when the testimony—the facts of the case—fails to support and justify a verdict and judgment that the conscience and understanding of the court are shocked.''

Here we find ourselves unable to say that our conscience and understanding are shocked. If plaintiff really suffered the miscarriage, it would seem to us that the award was reasonable. Whether or not she did suffer that misfortune was for the jury to say. We must assume that, having decided the matter upon substantial evidence, it was properly decided. The other injuries were more or less superficial, although doubtless very painful and disabling, at least temporarily. Taking the testimony as a whole, we can only say that there was testimony in the record which, if believed by the jury, was sufficient to justify the amount fixed.

Defendant coupled the assignment just discussed with the ▮▮▮▮ additional assignment that error was committed in the course of the trial on account of remarks made by one of counsel for plaintiff, in his argument to the jury. In the course of his closing argument, counsel made the statement that during the time he was city attorney juries had returned verdicts of $10,000 in similar cases. Opposing counsel objected and excepted to the remarks, whereupon the court instructed the jury to disregard such statements and admonished the jury that statements of counsel with reference to the case on trial not supported by the evidence were not to be considered; that the jury should decide the case solely upon the evidence and the instructions of the court, and should entirely disregard any statement of counsel not borne out by the evidence.

The claim of error in this particular was asserted upon the theory announced in the cases of *Bennett* v. *Gusdorf*, 101 Mont. 39, 53 Pac. (2d) 91, and *Ralph* v. *MacMarr Stores*, 103 Mont. 421, 62 Pac. (2d) 1285. In the opinions in those cases the mat-

ter of alleged misconduct of counsel was considered in the light of alleged excessive verdicts. In both of those cases the judgments were reversed upon that theory because the verdicts were of such magnitude as to create the belief that something other than the evidence might have entered into the cases. As we have indicated, the jury did not return what, upon the face of the record, would seem to be an unconscionable or exorbitant verdict. It cannot be said that the injection of the matter affected the size of the verdict. While the remarks of counsel were without the record and were not justified, nevertheless the jury did not actually approximate any such verdict in this case as he suggested. Counsel was talking about $10,000 verdicts for similar injuries. Here only a $1,600 verdict was returned.

It must be evident that the jury did not take counsel's statement at 100 per cent. and proceed to find the verdict for a similar amount. Whatever may have been the reasons actuating the size of the verdict, it is impossible to say that it shocks the conscience or that it was not supported by competent evidence.

In the case of *Doheny* v. *Coverdale,* 104 Mont. 534, 68 Pac. (2d) 142, we discussed an assignment of error which involved reference to an insurance policy. There we said: ''An examination of the record here would indicate that the statement of counsel for defendants that there was no liability insurance really had more effect upon the jury than did the injection of the matter into the case.'' The discussion leading up to that statement is pertinent here. We can only conclude from a consideration of the whole record that the admonition of the court to disregard the statements was taken seriously by the jury and heeded.

We have considered all of the assignments of error and find them without merit. The judgment is affirmed.

Associate Justices Anderson, Morris and Angstman concur.